1  THOMAS P. O'BRIEN
   United States Attorney
2  LEON W. WEIDMAN
   Assistant United States Attorney
3  Chief, Civil Division
   CARLA A. FORD (Cal. Bar No. 173380)
4  Assistant United States Attorney
       Room 7516 Federal Building
5      300 North Los Angeles Street
       Los Angeles, California 90012
6      Telephone:  (213) 894-3997
       Facsimile:  (213) 894-7819
7      Email:  carla.ford@usdoj.gov

8  ROBERT E. KIRSCHMAN, JR.
   Deputy Director
9  JOHN WARSHAWSKY
   Senior Trial Counsel
10 CHRISTIAN J. GROSTIC
   Trial Attorney
11 UNITED STATES DEPARTMENT OF JUSTICE
     Civil Division, Commercial Litigation Branch
12   Ben Franklin Station, P.O. Box 875
     Washington, D.C. 20044-0875
13   Telephone:  (202) 307-0010
     Facsimile:  (202) 305-4933
14   E-mail: john.warshawsky@usdoj.gov

15 Attorneys for Intervenor-Plaintiff

16                 UNITED STATES DISTRICT COURT

17                CENTRAL DISTRICT OF CALIFORNIA

18                      WESTERN DIVISION

19 ANN CHAE, et al.,                 )   Case No. CV 07-2319-R (RCx)
                                     )
20        Plaintiffs,                )   MEMORANDUM IN SUPPORT
                                     )   OF UNITED STATES' MOTION
21 v.                                )   FOR SUMMARY JUDGMENT
                                     )
22 SLM CORPORATION, et al.,          )
                                     )   Date:      June 2, 2008
23        Defendants,                )   Time:      10:00 am
                                     )   Court:     8, Spring Street
24 and                               )
                                     )
25 UNITED STATES OF AMERICA,         )   Before:    Hon. Manuel L. Real
                                     )
26        Intervenor-Plaintiff.      )
                                     )
27 _____  )

28

# TABLE OF CONTENTS

Page

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.     Nature of the Case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.    Statement of the Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     Overview of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    Summary Judgment is Appropriate in This Case.. . . . . . . . . . . . . . 7

    III.   To the Extent California State Law Holds That Sallie Mae's
Three Practices at Issue are Unlawful, Such State Law
Interferes With and is Contrary To Federal Law. . . . . . . . . . . . . . . 7

        A.    Under Well-Established Federal Law, A State's Law is
Preempted Both When Federal Law "Occupies" the Field
and When the State's Law Conflicts With Federal Law. . . . . . 7

        B.    Federal Law Expressly Requires or Authorizes the Three
Practices at Issue.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                1.    Federal Law Requires that FFEL Program
Servicers Charge Daily Simple Interest Based
Upon the Interval Between Receipt of Payments. . . . . 16

                2.    Federal Law Permits FFEL Program Lenders to
Charge Late Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

3. Federal Law Permits FFEL Program Loan Servicers to Set the First Payment Date on Consolidation and PLUS Loans Beyond 30 Days After Interest Begins to Accrue. . . . . . . . . . . . . . . . . . 21

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ii

# TABLE OF AUTHORITIES

## CASES

American Telephone & Telegraph Co. v. Central Office Telephone, Inc.,
   524 U.S. 214 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Armstrong v. Accrediting Council for Continuing Education & Training, Inc.,
   168 F.3d 1362 (D.C. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Barnett Bank v. Nelson,
   517 U.S. 25 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Brannan v. United Student Aid Funds, Inc.,
   94 F.3d 1260 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 16

Graham v. Security Savings & Loan,
   125 F.R.D. 687 (N.D. Ind. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

United States v. Locke,
   529 U.S. 89 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
   467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Crosby v. National Foreign Trade Council,
   530 U.S. 363 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

English v. General Electric Co.,
   496 U.S. 72 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Farmer v. United Brotherhood of Carpenters, Local 25,
   430 U.S. 290 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iii

<u>Fidelity Federal Savings & Loan Association v. De La Cuesta</u>,

    458 U.S. 141 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 21

<u>Florida Lime & Avocado Growers, Inc. v. Paul</u>,

    373 U.S. 132 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Geier v. American Honda Motor Co.</u>,

    529 U.S. 861 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Gibbons v. Ogden</u>,

    9 Wheat. 1 (1824). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Gibbs v. SLM Corp.</u>,

    336 F. Supp. 2d 1 (D. Mass. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Hillsborough County v. Automated Medical Laboratories, Inc.</u>,

    471  U.S. 707 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

<u>Hines v. Davidowitz</u>,

    312 U.S. 52 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Long Island Care at Home, Ltd. v. Coke</u>,

    127 S. Ct. 2339 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 19

<u>McCulloch v. PNC Bank Inc.</u>,

    298 F.3d 1217 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 15

<u>Medtronic, Inc. v. Lohr</u>,

    518 U.S. 470 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 16

<u>Morgan v. Markerdowne Corp.</u>,

    976 F. Supp. 301 (D.N.J. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Savage v. Jones</u>,

    225 U.S. 501 (1912). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Thrifty Oil Co. v. Bank of America National Trust & Savings Ass'n</u>,

    322 F.3d 1039 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iv

## STATUTES

20 U.S.C. § 1071. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 15

20 U.S.C. § 1077. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

20 U.S.C. § 1078. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

20 U.S.C. § 1078-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 21

20 U.S.C. § 1078-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 21

20 U.S.C. § 1082. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

20 U.S.C. § 1083. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

20 U.S.C. § 1087-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

20 U.S.C. § 1087a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

20 U.S.C. § 1087e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 19

20 U.S.C. § 1098g. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

## REGULATIONS

34 C.F.R. § 682.202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

34 C.F.R. § 682.202 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

34 C.F.R. § 682.205. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 18

34 C.F.R. § 682.209. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

34 C.F.R. § 682.303. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

34 C.F.R. § 682.304. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

34 C.F.R. § 682.401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

34 C.F.R. § 682.411. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

34 C.F.R. § 682.700. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

34 C.F.R. § 685.202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**RULE**

Fed. R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**LEGISLATIVE and REGULATORY HISTORY**

H.R. Rep. No. 102-447, <u>reprinted in</u> 1992 U.S.C.C.A.N. 334. . . . . . . . . . . . . . . 12

H.R. Conf. Rep. No. 99-861, <u>reprinted in</u> 1986 U.S.C.C.A.N. 2718. . . . . . . . . . 21

Due Diligence Requirements Final Regulations,

    61 Fed. Reg. 60478 (Nov. 27, 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Guaranteed Student Loan and PLUS Programs Final Regulations,

    51 Fed. Reg. 40886 (Nov. 10, 1986). . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Guaranteed Student Loans and PLUS Programs Notice of Proposed Rulemaking,

    50 Fed Reg. 35964 (Sept. 4, 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Board of Governors of the Federal Reserve System Official Staff Interpretations,

    42 Fed. Reg. 35146 (July 8, 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

vi

## STATEMENT OF THE ISSUES

1.      Whether Defendants' practice of assessing daily simple interest based upon the interval between receipt of payments is lawful under controlling federal law and, therefore, California state law is preempted to the extent the practice is contrary to California state law.

2.      Whether Defendants' practice of assessing late fees for payments received more than 15 days after the scheduled payment date is lawful under controlling federal law and, therefore, California state law is preempted to the extent the practice is contrary to California state law.

3.      Whether Defendants' practice of assessing daily simple interest for Consolidation and PLUS loans more than 30 days after the disbursement date is lawful under controlling federal law and, therefore, California state law is preempted to the extent the practice is contrary to California state law.

## STATEMENT OF THE CASE

I.     Nature of the Case

Plaintiffs Ann Chae, William J. Coakley, Hoon Koo, and Carlos A. Pineda (collectively, "Plaintiffs") are California residents who obtained student loans from private sources.  Their loans were guaranteed and interest rates subsidized by the federal government, pursuant to the Federal Family Education Loan ("FFEL") Program.  The FFEL Program is authorized by Title IV, Part B, of the Higher Education Act of 1965 ("Higher Education Act"), as amended.  20 U.S.C. § 1071 et seq.

On April 6, 2007, Plaintiffs brought this civil action against a major private lender and servicer of student loans, Sallie Mae, Inc.; its holding company, SLM Corporation; and a sister entity that, according to Defendants, no longer exists, Sallie Mae Servicing Corporation (collectively "Sallie Mae").  Complaint (Apr. 6,

1

2007) (Dkt. No. 1); Amended Complaint ("Am. Comp.") (Apr. 12, 2007) (Dkt. No. 3). As detailed in our Complaint-In-Intervention, Plaintiffs challenge the following three practices of Sallie Mae:

- • The assessment of daily simple interest based upon the interval between receipt of payments,

- • The assessment of late fees for payments received more than 15 days after the scheduled payment date, and

- • The assessment of daily simple interest for Consolidation loans and PLUS loans more than 30 days after the disbursement date.[1]

Complaint In Intervention For Declaratory Judgment By Intervenor-Plaintiff United States ("Complaint in Intervention") ¶ 1 (Mar. 24, 2008) (Dkt. No. 101-2). Plaintiffs allege that Sallie Mae has violated California statutory and common law for reasons that include its use of the above-described practices. See Am. Comp. ¶¶ 3-8, 45-56 (Apr. 12, 2007) (Dkt. No. 3).[2]

As we explain in this memorandum, the three practices of which Plaintiffs complain are either required or authorized by applicable federal statutory and regulatory authority. Moreover, Congress has expressly confirmed its intention that there be national uniformity in the FFEL Program and uniformity between the FFEL Program and the analogous public direct-lending program, known as the

---

[1] As we further explain in our Complaint in Intervention, Consolidation loans are, as the name implies, loans issued to consolidate multiple student loans into a single loan, and PLUS loans are student loans made to parents. Complaint in Intervention ¶ 11(b)-(c). The United States further notes that under a 2006 amendment to the Higher Education Act, PLUS loans are also available to graduate or professional school students. Pub. L. No. 109-171, § 8005(c)(1)(A), codified at 20 U.S.C. § 1078-2(a)(1).

[2] Plaintiffs' allegations of wrongdoing are not limited to Sallie Mae's use of the three practices, e.g., Am. Comp. ¶ 5 (discussing Sallie Mae's billing statements), and the United States takes no position regarding Plaintiffs' allegations beyond those challenging the legality of the three practices under California state law.

2

1    William D. Ford Federal Direct Loan Program (the "Direct Loan Program").  If

2    Plaintiffs prevail in their claims that any of the three practices utilized by Sallie

3    Mae (and other private lenders and loan servicers) are contrary to California state

4    law, the uniformity mandated by Congress will be unlawfully compromised.

5    Accordingly, the United States seeks a declaratory judgment that, to the extent any

6    of the three practices is arguably contrary to California state law, the state law is

7    preempted by the Supremacy Clause of the United States Constitution and

8    controlling federal law.

9    II.    Statement of the Facts

10         The United States' motion presents legal issues for this Court, and the

11   Court's consideration of this motion depends upon few facts.  See United States'

12   Statement of Uncontroverted Facts and Conclusions of Law (filed

13   contemporaneously with this motion).

14         The FFEL Program provides for three basic types of federally guaranteed

15   student loans:  (a) "Stafford" loans (subsidized and unsubsidized), which are made

16   to students, (b) "PLUS" loans, which are made to parents and graduate and

17   professional school students, and (c) "Consolidation" loans, which are used to

18   consolidate multiple student loans into a single loan

19         During the early 1990s, Congress enacted legislation which, among other

20   things, changed the name of the Guaranteed Student Loan Program to the FFEL

21   Program, Higher Education Amendments of 1992, Pub. L. No. 102-325, § 411,

22   106 Stat 448, 510, and established a direct-lending program then-known as the

23   "Federal Direct Student Loan Program," Student Loan Reform Act of 1993, Pub.

24   L. No. 103-66, Title IV, Subtitle A, 107 Stat. 340, current version codified at 20

25   U.S.C. § 1087a et seq., and now known as the "William D. Ford Federal Direct

26   Loan Program."

27

28                                          3

1    When Congress established the FFEL Program, Congress directed the
2    Secretary of Education ("Secretary") to promulgate implementing regulations and
3    further establish a deadline for promulgations of the regulations.  See Higher
4    Education Amendments of 1992, Pub. L. No. 102-325, § 411(d), 106 Stat 448, 510
5    ("Notwithstanding any other provision of this part, no new loan guarantees shall
6    be issued after June 30, 1994, if the Secretary does not issue final regulations
7    implementing the changes made to this part under the Higher Education
8    Amendments of 1992 prior to that date. . . .").  In response to Congress' directive,
9    the Secretary published the final regulations for the FFEL Program, which were
10   codified at 34 C.F.R. Part 682.  57 Fed. Reg. 60280, 1992 WL 371979 (Dec. 18,
11   1992).

12   The individual Plaintiffs are California residents who borrowed amounts for
13   student loans under the FFEL Program.  Plaintiffs commenced this action against
14   Defendants Sallie Mae, which service FFEL Program loans.

ARGUMENT

16   I.    Overview of Argument

17   The FFEL Program is a federal student loan program pursuant to which
18   students and parents of students may obtain funds for post-secondary education
19   through a vast group of private lenders and loan servicers, including Sallie Mae.
20   Congress has long recognized that student loan programs are a critical component
21   of the federal commitment to post-secondary education and, in that context,
22   Congress has repeatedly confirmed its intent that the FFEL Program operate and
23   be governed by nationally uniform regulations and standards.  To achieve the goal
24   of national uniformity, the Department of Education has promulgated regulations
25   governing the FFEL Program, at the express direction of Congress, and has
26   codified various other requirements regarding administration of the FFEL

4

1   Program.  Further, in the early 1990s, Congress established the Direct Loan

2   Program, the governmental program analogous to the FFEL Program, and

3   Congress generally requires, by statute, that loans made to borrowers under the

4   Direct Loan Program have the same terms, conditions, and benefits, and be

5   available in the same amounts, as loans made to borrowers under the FFEL

6   Program.

7       Plaintiffs' challenges to the three practices at issue are centered on Sallie

8   Mae's use of the so-called "daily simple interest" method for calculating interest

9   on loans, pursuant to which interest is calculated and accrues on a daily basis.

10   Plaintiffs contend, instead, that borrowers' payments should be calculated as a

11   fixed amount – what Plaintiffs refer to as the "installment method" – and that the

12   interest calculation should "not [be] impacted by the date the [borrower's]

13   payment is received."  Am. Comp. ¶ 2.  Thus, Plaintiffs essentially argue that

14   FFEL Program borrowers should not receive any benefit when they make

15   payments ahead of schedule (because Plaintiffs' argument necessarily requires that

16   such borrowers be charged interest for periods between receipt of their payments

17   and the following scheduled payment dates) and, similarly, that FFEL Program

18   borrowers who make payments after their scheduled payment dates should not be

19   charged interest for their late payments.

20       As we explain in this memorandum, Sallie Mae's practices – like the

21   practices followed by the other FFEL Program lenders and loan servicers – are

22   required or authorized under federal law.  If Plaintiffs were to prevail in their

23   allegation that any of the three practices challenged by the Amended Complaint

24   violates California state law, such a finding would have the following adverse

25   consequences:

26

27

28                                    5

(a)    The national uniformity mandated by Congress for the FFEL Program would be compromised in that the standards for compliance with the requirements of the FFEL Program would be subject to state law standards that might conflict with federal law;

(b)    The national uniformity mandated by Congress for the FFEL Program would be compromised in that private entities that lend and/or service federal student loans would be subject to state law standards that might conflict with federal law;

(c)    Because the Department of Education is assigned loans issued to California residents under certain circumstances, to the extent such loans are assigned to the Department of Education, the federal government arguably would be subject to interest practice requirements that conflict with those followed for FFEL Program borrowers in other states, contrary to Congress' mandate for national uniformity; and

(d)    Congress' mandate that the Direct Loan Program be generally uniform to the FFEL Program would be compromised because the terms, conditions, and benefits under the Direct Loan Program would not be uniform to those under the FFEL Program to the extent lenders and servicers under the FFEL Program were compelled by state laws to modify their practices, potentially in conflict with federal law.

Thus, the practices of which Plaintiffs complain are required or authorized by governing federal law, and to the extent California state law is contrary to such federal law, state law is preempted and invalid. Accordingly, this Court should enter declaratory judgment in favor of the United States, as sought in the Complaint in Intervention.

6

II.     Summary Judgment is Appropriate in This Case

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is only material "when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of America National Trust & Savings Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In this case, the United States' claims present only "question[s] of law suitable for disposition on summary judgment." Id.  The objective of the FFEL Program in establishing a nationally uniform, agency-regulated set of loan documents and servicing practices preempts California state law to the extent that state law would find unlawful any of the three practices at issue.  Because the three practices are required or authorized by federal law, the Court should enter summary judgment in favor of the United States with respect to the Complaint in Intervention.

III.    To the Extent California State Law Holds That Sallie Mae's Three
        Practices at Issue are Unlawful, Such State Law Interferes With and is
        Contrary To Federal Law

        A.      Under Well-Established Federal Law, A State's Law is
                Preempted Both When Federal Law "Occupies" the Field
                and When the State's Law Conflicts With Federal Law

"It is a familiar and well-established principle that the Supremacy Clause invalidates state laws that 'interfere with, or are contrary to,' federal law," regardless of whether that federal law is found in federal statutes or federal regulations. Hillsborough County v. Automated Medical Laboratories, Inc., 471

U.S. 707, 713 (1985) (quoting Gibbons v. Ogden, 9 Wheat. 1, 211 (1824)

(Marshall, C.J.)).  The Supreme Court has determined that federal law preempts

state law in three situations.  First, federal statutes or regulations may preempt

state law "by so stating in express terms."  Id.  Second, federal law preempts state

law when federal law "occup[ies] the field," i.e., what is referred to as "field

preemption."  Crosby v. National Foreign Trade Council, 530 U.S. 363, 372

(2000); see also Hillsborough, 471 U.S. at 713.  Third, state law is preempted

when it conflicts with federal law, i.e., what is referred to as "conflict

preemption."[3]  "Such a conflict arises when 'compliance with both federal and

state regulations is a physical impossibility,' or when state law 'stands as an

obstacle to the accomplishment and execution of the full purposes and objectives

of [federal law.]'"  Hillsborough, 471 U.S. at 713 (quoting Florida Lime &

Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43 (1963), and Hines v.

Davidowitz, 312 U.S. 52, 67 (1941)); see also Crosby, 530 U.S. at 372-73.

　　　To determine whether state law is subject to field or conflict preemption,[4]

this Court must examine the full scope of the federal statutory and regulatory

scheme:

> For when the question is whether a Federal act overrides a state law,
>
> the entire scheme of the statute must, of course, be considered, and
>
> that which needs must be implied is of no less force than that which is

---

[3]　　　The Supreme Court has noted that these three categories are not "rigidly distinct."  English v. General Electric Co., 496 U.S. 72, 79 n.5 (1990).  For example, "field pre-emption may be understood as a species of conflict pre-emption."  Id.

[4]　　　The United States does not assert that the three practices at issue, rooted in the daily simple interest method challenged by Plaintiffs, is the subject of a federal statute or regulation that expressly preempts California state law.  Thus, this memorandum addresses the other two forms of preemption, i.e., field preemption and conflict preemption.

1    expressed. <u>If the purpose of the act cannot otherwise be accomplished</u>

2    <u>– if its operation within its chosen field else must be frustrated and its</u>

3    <u>provisions be refused their natural effect – the state law must yield to</u>

4    <u>the regulation of Congress within the sphere of its delegated power</u>.

5    <u>Savage v. Jones</u>, 225 U.S. 501, 533 (1912) (emphasis added) (quoted in <u>Crosby</u>,

6    530 U.S. at 373).

7        In addition, this Court must give weight to an agency's determination of the

8    objectives of its own regulations and whether state law would impede the

9    accomplishment of those objectives.  <u>See</u> <u>Geier v. American Honda Motor Co.</u>,

10   529 U.S. 861, 883-84 (2000); <u>see also</u> <u>Brannan v. United Student Aid Funds, Inc.</u>,

11   94 F.3d 1260, 1264 (9th Cir. 1996) ("Because Congress has delegated to the

12   Secretary [of Education] its authority to implement the provisions of the [Higher

13   Education Act], the Secretary 'is uniquely qualified to determine whether a

14   particular form of state law 'stands as an obstacle to the accomplishment and

15   execution of the full purposes and objectives of Congress,' . . . and, therefore,

16   whether it should be pre-empted.'" (quoting <u>Medtronic, Inc. v. Lohr</u>, 518 U.S.

17   470, 496 (1996) (ellipsis in <u>Brannan</u>)).

18       Examining the full scope of the federal statutory and regulatory scheme here

19   reveals that, to the extent the three practices at issue would be contrary to state

20   law, state law would unavoidably conflict with federal law.  Congress has

21   described four ultimate goals of the Higher Education Act and the FFEL Program:

22   "to (1) encourage lenders to make student loans; (2) provide student loans to those

23   [who] would not otherwise have access to funds; (3) pay a portion of the interest

24   on student loans; and (4) guarantee lenders against losses." <u>McCulloch v. PNC</u>

25   <u>Bank Inc.</u>, 298 F.3d 1217, 1224 (11th Cir. 2002) (summarizing 20 U.S.C.

26   § 1071(a)(1)).

27

28

9

To fulfill its stated goals for the Higher Education Act and the FFEL Program, Congress has created a comprehensive statutory scheme to ensure national uniformity in the core aspects of the FFEL Program.  That Congress intends national uniformity is confirmed by reviewing the comprehensive statutory scheme governing federal student loan programs, as is illustrated by the following statutes:

(a)     20 U.S.C. § 1082(a)(1), which specifically authorizes the Secretary to "prescribe such regulations as may be necessary to carry out the purposes of [the FFEL Program], including regulations applicable to third party servicers . . . to establish minimum standards with respect to sound management and accountability under [the FFEL Program], . . . ."

(b)     20 U.S.C. § 1078-3(c)(4), which, among other things, mandates that "[r]epayment of a consolidation loan shall commence within 60 days after all holders have . . . discharged the liability of the borrower on the loans selected for consolidation";

(c)     20 U.S.C. § 1078-2(d)(1), which, among other things, mandates that repayment of PLUS loan principal "shall commence not later than 60 days after the date such loan is disbursed by the lender";

(d)     20 U.S.C. § 1082(l), which provides that "[t]he Secretary shall, by regulation developed in consultation with guaranty agencies, lenders, institutions of higher education, secondary markets, students, third party servicers and other organizations involved in providing loans under [the FFEL Program], prescribe standardized forms and procedures regarding – (A) origination of loans; (B) electronic funds transfer; (C) guaranty of loans; (D) deferments; (E) forbearance; (F)

10

servicing; (G) claims filing; (H) borrower status change and
anticipated graduation date; and (I) cures";

(e)   20 U.S.C. § 1082(m)(1)-(3), which requires the Secretary to prescribe
common guaranteed student loan application forms, promissory notes,
common deferment forms, and common reporting formats;

(f)   20 U.S.C. § 1083, which mandates the disclosure of a broad range of
information by lenders before disbursement of a loan and prior to the
start of the repayment period;

(g)   20 U.S.C. § 1087e(a)(1), which directs that "[u]nless otherwise
specified in this part [governing the Direct Loan Program], loans
made to borrowers under this part shall have the same terms,
conditions, and benefits, and be available in the same amounts, as
loans made to borrowers under [the FFEL Program]"; and

(h)   20 U.S.C. § 1098g, which expressly confirms Congress' intent that
federal student loans "shall not be subject to any disclosure
requirements of any State law."

Cf. Graham v. Security Savings & Loan, 125 F.R.D. 687, 693 n.7 (N.D. Ind. 1989)
("The Court agrees that the [Guaranteed Student Loan] program [now the FFEL
Program] is and must be governed by uniform federal rules applicable to every
lender, school and student in every state." (internal quotation marks omitted)),
aff'd on other grounds sub nom. Veal v. First American Savings Bank, 914 F.2d
909 (7th Cir. 1990).

The national uniformity desired by Congress for the FFEL Program is
further confirmed by a review of the comprehensive regulatory scheme applicable
to this federal program.  In the early 1990s, Congress reformed the FFEL Program
(then known as the Guaranteed Student Loan Program) "to correct inequities,

11

improve program integrity, simplify the program for the borrower and other participants, and ensure the stability of the loan program," H.R. Rep. No. 102-447, at 41, reprinted in 1992 U.S.C.C.A.N. 334, 374, and in so doing unambiguously directed the Secretary of Education to enact comprehensive final implementing regulations, H.R. Rep. No. 102-447, at 41-42, reprinted in 1992 U.S.C.C.A.N. 334, 374-75. The Department of Education acted on that directive promptly, promulgating a comprehensive regulatory scheme further ensuring national uniformity in the core aspects of the FFEL Program. That comprehensive regulatory scheme includes, but is not limited to:

(a) 34 C.F.R. § 682.202, which limits "charges that lenders may impose on borrowers, either directly or indirectly," and covers interest, capitalization charges, fees for FFEL Program loans, insurance premiums, administrative charges for certain refinancings, late charges, collection charges, and special allowance charges;

(b) 34 C.F.R. § 682.205, which prescribes disclosure requirements for lenders, including initial disclosures, separate statements of borrowers' rights and responsibilities, and repayment information;

(c) 34 C.F.R. § 682.209(a)(2), which provides that, for both unsubsidized Stafford student loans and PLUS loans to parents, "[i]nterest accrues and is due and payable from the date of the first disbursement of the loan";

(d) 34 C.F.R. § 682.209(b)(1), which establishes that lenders may apply payments from borrowers "first to any late charges accrued or collection costs and then to any outstanding interest and then to outstanding principal"; and

(e)    34 C.F.R. § 682.401(d)(3), which requires all guaranty agencies to "use common application forms, promissory notes, Master Promissory Notes, and other common forms approved by the Secretary."

More specifically, the statutory scheme and its implementing regulations made clear that Congress and the Department of Education intended to ensure national uniformity in the very aspects of the FFEL Program that are at issue:  the FFEL Program loan documents and the servicing practices of loan servicers. Congress directed the Secretary to prescribe standardized forms and procedures regarding, among other things, origination of loans and servicing of loans, 20 U.S.C. § 1082(l), and to prescribe common promissory notes and other loan documents, 20 U.S.C. § 1082(m).  Congress mandated the disclosure of a broad range of information by lenders before disbursement of a loan and prior to the start of the repayment period, 20 U.S.C. § 1083, and expressly exempted FFEL Program loans from any disclosure requirements of state law, 20 U.S.C. § 1098g. Finally, as noted above, Congress provided for uniformity in the "terms, conditions, and benefits" of loans made under the Direct Loan Program and the FFEL Program.  20 U.S.C. § 1087e(a)(1).

As directed by Congress, the Department of Education promulgated regulations implementing these requirements.  The regulations ensure uniformity in the loan documents used by lenders and servicers, setting forth disclosure requirements for lenders, 34 C.F.R. § 682.205, and requiring all participants to use standardized promissory notes and other loan documents promulgated by and approved by the agency, 34 C.F.R. § 682.401(d)(3).  The regulations also implement Congress' directive to prescribe standardized servicing procedures by, for example, limiting "charges that lenders may impose on borrowers, either

13

directly or indirectly" for interest, late fees, and a wide range of other charges, 34 C.F.R. § 682.202, and establishing uniform rules for repayment, 34 C.F.R. § 682.209.  See also Brannan, 94 F.3d at 1266 (noting that the FFEL Program "requires uniformly administered collection standards in order to remain viable").[5] Finally, the Department of Education has established enforcement mechanisms for violations of these statutes and regulations.  34 C.F.R. §§ 682.700-.713.

Congress' statutory scheme and the Department of Education's implementing regulations establish rules for the servicing of loans and the use of common promissory notes and loan documents that reflect and fulfill the interest in national uniformity.  Courts throughout the country have thus concluded that state law is preempted to the extent that state law, rather than the Department of Education, would regulate the servicing practices and loan documents of the FFEL Program.  See Armstrong v. Accrediting Council for Continuing Education & Training, Inc., 168 F.3d 1362, 1369 (D.C. Cir. 1999); Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 16-17 (D. Mass. 2004); Morgan v. Markerdowne Corp., 976 F. Supp. 301, 319 (D.N.J. 1997); Graham, 125 F.R.D. at 692-93.  Nevertheless, to the extent Plaintiffs are challenging the three practices at issue, they are arguing that California state law requires servicing methods different from those required nationwide by the Department of Education and/or promissory notes, forms, or disclosures different from those required by the Department of Education.[6]  Thus,

---

[5]     Additionally, the Department of Education relies on the national uniformity of FFEL Program forms and servicing procedures in performing its own servicing role.  Under certain circumstances, loans must be assigned to the Department of Education.  See, e.g., 34 C.F.R. § 682.209(a).  These loans originate from lenders and servicers across the country, and the Department of Education's ability to service those loans uniformly and efficiently depends on the standardization of FFEL Program forms and servicing procedures.

[6]     The fact that the California state laws at issue are not specifically designed to regulate FFEL Program loans is of no consequence.  "[I]t is well settled that the general applicability of a state cause of action is not sufficient to

1   to the extent that California state law would bar the three practices at issue,

2   California state law is fundamentally at odds with the objective of the FFEL

3   Program in establishing a nationally uniform, agency-regulated set of loan

4   documents and servicing practices.  <u>Cf</u>. <u>United States v. Locke</u>, 529 U.S. 89, 112-

5   16 (2000) (concluding that a federal statute that authorized the Coast Guard to

6   promulgate regulations covering design, construction, alteration, repair,

7   maintenance, operation, equipping, personal qualification, and manning of tanker

8   vessels preempted state laws that imposed requirements in those same areas);

9   <u>American Telephone & Telegraph Co. v. Central Office Telephone, Inc.</u>, 524 U.S.

10  214, 225-26 (1998) (concluding that a state law breach-of-contract claim was

11  preempted because federal statute and a federally required rate filing prescribed a

12  long distance telephone company's permissible charges).

13        Moreover, to the extent that California state law would bar the three

14  practices at issue and frustrate the objective of national uniformity, California state

15  law is also fundamentally at odds with the goal of the FFEL Program in

16  "encourag[ing] lenders to make student loans."  <u>McCulloch</u>, 298 F.3d at 1224; <u>see</u>

17  <u>also</u> 20 U.S.C. § 1071(a)(1)(A) & (B).  To participate in the FFEL Program,

18  lenders must follow agency-approved standardized servicing procedures, 20

19  U.S.C. § 1082(l), and must use agency-approved common promissory notes and

20  other loan documents, 20 U.S.C. § 1082(m).  Violations of these statutory

21  requirements and their implementing regulations warrant enforcement action by

22  the Department of Education, including the potential for suspension or termination

23  of eligibility to participate in the FFEL Program.  <u>See</u> 34 C.F.R. § 682.700(a).  To

24  the extent state law would bar the three practices at issue, however, it would be

25

26  ──────────────────

27  exempt it from pre-emption."  <u>Farmer v. United Brotherhood of Carpenters, Local</u>
    <u>25</u>, 430 U.S. 290, 300 (1977).

28                                          15

1  impossible for a loan servicer to both comply with California state law and avoid a

2  potential enforcement action.

3         B.      Federal Law Expressly Requires or Authorizes the Three

4                Practices at Issue

5        Besides establishing a nationally uniform, agency-regulated set of loan

6  documents and servicing practices, federal statutes and regulations also expressly

7  require and authorize the three specific practices at issue.  Notably, this Court

8  must give deference to the agency's interpretation of the relevant federal law.

9  "[C]onsiderable weight should be accorded to an executive department's

10  construction of a statutory scheme it is entrusted to administer . . . ."  Chevron

11  U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844

12  (1984).  Perhaps most important in this case, "an agency's interpretation of its own

13  regulations is 'controlling' unless plainly erroneous or inconsistent with the

14  regulations being interpreted."  Long Island Care at Home, Ltd. v. Coke, 127 S.

15  Ct. 2339, 2349 (2007) (internal quotation marks omitted).  Moreover, "the

16  Secretary [of Education] 'is uniquely qualified to determine whether a particular

17  form of state law "stands as an obstacle to the accomplishment and execution of

18  the full purposes and objectives of Congress," . . . and, therefore, whether it should

19  be pre-empted.'"  Brannan, 94 F.3d at 1264 (quoting Medtronic, 518 U.S. at 496)

20  (ellipsis in Brannan).

21           1.     Federal Law Requires that FFEL Program Servicers

22                Charge Daily Simple Interest Based Upon the Interval

23                Between Receipt of Payments

24        To the extent that California state law would bar FFEL Program servicers

25  from charging daily simple interest based upon the interval between receipt of

26  payments, that state law would directly conflict with the default federal rule and

27

28                      16

1   the Department of Education's FFEL Program regulations, both of which require

2   servicers to charge daily simple interest.  Accordingly, federal law preempts

3   California state law on this point.

4         The Federal Reserve Board has stated clearly the default federal rule within

5   which the Department of Education promulgated the regulatory scheme governing

6   the FFEL Program:

> 7   [I]t is <u>inherent in the definition of a simple interest installment loan</u>
>
> 8   <u>that interest will be calculated and charged on a daily basis</u> on the
>
> 9   unpaid balance of the loan and that late or early payments will thus
>
> 10   affect the amount of the final payment.

11   Board of Governors of the Federal Reserve System Official Staff Interpretations,

12   42 Fed. Reg. 35146, 35149 (July 8, 1977) (emphasis added).  Plaintiffs themselves

13   assert that FFEL Program loans are installment loans that charge simple interest.

14   <u>See</u>, <u>e.g.</u>, Am. Comp. ¶ 1.

15         The Department of Education promulgated the FFEL Program regulations

16   against this background, reaffirming and building upon the default rule that FFEL

17   Program servicers would charge daily simple interest.  For example, the

18   regulations reaffirm that interest charges run daily, <u>see</u> 34 C.F.R. § 682.209(a)(2)

19   (providing that, for both unsubsidized Stafford student loans and PLUS loans to

20   parents, "[i]nterest accrues and is due and payable from the date of the first

21   disbursement of the loan"); <u>see also</u> 20 U.S.C. § 1078(b)(7), and reaffirm that

22   interest must be calculated on the date a payment is received, <u>see</u> 34 C.F.R.

23   § 682.209(b)(1) (providing that lenders may apply payments from borrowers "first

24   to any late charges accrued or collection costs and then to any outstanding interest

25   and then to outstanding principal").

26

27

28                      17

In addition, both statutory and regulatory authorities implicitly recognize the propriety of the daily simple interest method.  Pursuant to 20 U.S.C. § 1083(b)(8), loan servicers must disclose "the projected total of interest charges which the borrower will pay on the loan or loans, assuming that the borrower makes payments exactly in accordance with the repayment schedule."  Id. (emphasis added).  Further, 34 C.F.R. § 682.205(c)(2)(viii) implements this statutory provision by requiring that servicers disclose only the "estimated total amount of interest to be paid on the loan," recognizing that interest may vary if payments are not "made in accordance with the repayment schedule."[7]   Id. Finally, regulations require that lenders calculate the interest subsidies paid by the federal government – which, by statute, are limited to interest charges borrowers would otherwise be obligated to pay, see 20 U.S.C. §§ 1078(a)(3)(A) and 1087-1(b)(2) – by using daily simple interest.  See 34 C.F.R. § 682.304 (permitting the use of one of two methods - the "actual accrual method" or the "average daily balance method" - both of which, within rounding errors, compute daily simple interest).[8]

---

[7]    The reference to "estimated" interest is critical because the actual amount of interest necessarily depends on the dates when payments are received and applied by lenders and loan servicers.  If interest were to be calculated as Plaintiffs allege, there would be no reason for estimating interest; it would be a fixed amount.

[8]    In the FFEL Program's history, other methods for calculating interest and interest subsidies have been permitted, but the course of that historical development reaffirms the Department of Education's interpretation of the current regulations.  For example, before 1987, lenders were permitted to use the "Approximate Time-Ordinary Interest" method or the "Exact Time-Exact Interest" method, but not the "Banker's Rule," for calculating interest.  See 34 C.F.R. § 682.202(a)(2) (1986).  In 1987, the provision authorizing these practices was deleted, and at the same time, the FFEL Program regulations limited calculation of interest subsidies to the two current methods.  See Guaranteed Student Loan and PLUS Programs Final Regulations, 51 Fed. Reg. 40886, 40901 (Nov. 10, 1986) (codifying in 34 C.F.R. § 682.303 the methods for computing interest subsidies now found in 34 C.F.R. § 682.304).  The regulations prohibited other methods of calculating interest subsidies because they were not "precise means of determining

18

Finally, the Department of Education utilizes the daily simple interest method to calculate interest on loans under the Direct Loan Program,[9] and Congress has mandated that such loans must have "the same terms, conditions, and benefits" as the FFEL Program.  20 U.S.C. § 1087e(a)(1).

Because the Department of Education's interpretation, relying on and reaffirming the federal default rule and 20 U.S.C. § 1083(b)(8), is not "plainly erroneous or inconsistent with the regulations being interpreted," it is controlling and preempts any contrary state law.  Long Island Care at Home, 127 S. Ct. at 2349 (internal quotation marks omitted).

---

the amount of interest benefits and special allowance that has accrued on a loan," Guaranteed Student Loan and PLUS Programs Final Regulations, 51 Fed. Reg. 40886, 40939-40 (Nov. 10, 1986), and noted that the two permitted methods "produce the same results with respect to the amount of interest benefits and special allowance payable by the Secretary," Guaranteed Student Loans and PLUS Programs Notice of Proposed Rulemaking, 50 Fed Reg. 35964, 35967 (Sept. 4, 1985).

Further, in 1987, the Department of Education issued a regulation prohibiting the so-called "Rule of 78's," a method of "computing all interest due by means of a pre-computed system."  Guaranteed Student Loan and PLUS Programs Final Regulations, 51 Fed. Reg. 40886, 40939 (Nov. 10, 1986).  Notably, the Plaintiffs' interpretation of California state law would require the computation of all interest due by means of a pre-computed system.  See Am. Comp. ¶ 2 (Apr. 12, 2007) (Dkt. No. 3) ("In other words, the amount of interest charged per installment is fixed and is not impacted by the date the payment is received.").

[9]  See the Department of Education's Direct Loan Servicing website at www.dlssonline.com/borrower/QctrHelpIndex.do?SectionId=Cint .  The method for calculating interest is publicly accessible by selecting the link for "How Can I Calculate the Amount of Interest on My Own?"  A copy of this page from the website is included as Exhibit I to this memorandum.

2.     **Federal Law Permits FFEL Program Lenders to**
       **Charge Late Fees**

FFEL Program regulations authorize lenders to charge a late fee "if the borrower fails to pay all or a portion of a required installment payment within 15 days after it is due," if authorized by a borrower's promissory note.  34 C.F.R. § 682.202(f);[10] see also 34 C.F.R. § 682.411(c) (requiring a lender to send a first delinquency notice when a payment is not received within fifteen days after the scheduled payment date); Federal Family Education Loan Program; Due Diligence Requirements Final Regulations, 61 Fed. Reg. 60478, 60484 (Nov. 27, 1996) (extending to fifteen days the time period before which a lender may charge a late fee as a "conforming change" to the provision extending to fifteen days the time period for generating the first delinquency notice).

Although federal law does not require the imposition of a late fee, to the extent California state law would bar the imposition of a federally authorized late fee, state law is preempted.  Where federal law "has not expressly conditioned the grant of 'power' upon a grant of state permission, the [Supreme] Court has ordinarily found that no such condition applies."  Barnett Bank v. Nelson, 517 U.S. 25, 34 (1996); cf. Fidelity Federal Savings & Loan Association v. De La Cuesta, 458 U.S. 141, 154-59 (1982) (concluding that a regulation authorizing a federal savings and loan to include a particular provision in a loan agreement preempted state law that restricted the use of that provision).  The regulation authorizing lenders to charge late fees is not conditioned upon a grant of

---

[10]     Federal regulations authorize late fees to be charged on loans issued under both the FFEL Program and the Direct Loan Program, but late fees may only be charged on loans under the Direct Loan Program "if the borrower fails to pay all or a portion of a required installment payment within 30 days after it is due." 34 C.F.R. § 685.202(d)(2).

20

1  permission by state law and, therefore, it preempts more restrictive state law and

2  permits the practice of charging late fees.

3        3.     Federal Law Permits FFEL Program Loan Servicers to

4                Set the First Payment Date on Consolidation and PLUS

5                <u>Loans Beyond 30 Days After Interest Begins to Accrue</u>

6        By statute, the Higher Education Act authorizes FFEL Program loan

7  servicers to set the first payment date on Consolidation and PLUS loans up to sixty

8  days after interest begins to accrue.  <u>See</u> 20 U.S.C. § 1078-2(d)(1) (mandating that

9  repayment of PLUS loan principal "shall commence not later than 60 days after

10 the date such loan is disbursed by the lender"); 20 U.S.C. § 1078-3(c)(4)

11 (mandating that "[r]epayment of a consolidation loan shall commence within 60

12 days after all holders have . . . discharged the liability of the borrower on the loans

13 selected for consolidation").  The statute reflects a careful balance between the

14 desire to start repayment early and the need to give students, lenders, and loan

15 servicers the opportunity to prepare for repayment.  <u>See</u> H.R. Conf. Rep. No. 99-

16 861, at 396, <u>reprinted</u> <u>in</u> 1986 U.S.C.C.A.N. 2718, 2753 (noting that the final

17 provision providing for repayment to begin on PLUS loans within sixty days with

18 exceptions was a compromise from a House amendment providing for repayment

19 to begin within ninety days).  To the extent California state law would impose any

20 additional restrictions, state law would frustrate the purposes of federal law and

21 impose limits upon a congressional grant of authority.  <u>See</u> <u>Barnett Bank</u>, 517 U.S.

22 at 34; <u>Fidelity Federal Savings & Loan Association</u>, 458 U.S. at 154-59.

23       Indeed, because the FFEL Program regulations and statutes provide that

24 "[t]he borrower may prepay the whole or any part of a loan at any time without

25 penalty," 34 C.F.R. § 682.209(b)(2)(I); <u>see</u> <u>also</u> 20 U.S.C. § 1077(a)(2)(F), setting

26 the first payment beyond thirty days benefits borrowers in that it provides

27

28                              21

borrowers with the <u>option</u> of submitting payments within the first thirty-day period but does not require it.  Under federal law requiring servicers to charge daily simple interest, such payments would be applied when received and would reduce the borrowers' loan balances as of the date of receipt.

Moreover, Plaintiffs' contrary position undermines their primary argument and further demonstrates that federal law requires that FFEL Program servicers charge daily simple interest.  Plaintiffs allege that if the first payment is set beyond thirty days after interest begins to accrue, "the borrower will immediately fall behind" in repaying their loan, <u>see</u> Am. Comp. ¶ 6; that is, that setting the first payment beyond thirty days is inconsistent with the pre-computed interest payment schedule that Plaintiffs allege is required.  However, as demonstrated above, setting the first payment beyond thirty days is both authorized by federal law and, under federal law requiring servicers to charge daily simple interest, benefits borrowers.  Only Plaintiffs' interpretation of the manner in which interest is to be calculated creates a conflict with the federal laws permitting the first payment to be set beyond thirty days.

CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court enter summary judgment in favor of the Intervenor-Plaintiff and enter declaratory judgment as sought in the Complaint in Intervention.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

J. CHRISTOPHER KOHN
Director

ROBERT E. KIRSCHMAN, JR.
Deputy Director

1

2                                      /s/ Christian J. Grostic

3                                      JOHN WARSHAWSKY
                                       Senior Trial Counsel
4                                      CHRISTIAN J. GROSTIC
                                       Trial Attorney
5                                      United States Department of Justice
                                       Commercial Litigation Branch
6                                      Civil Division
                                       P.O. Box 875
7                                      Ben Franklin Station
                                       Washington, D.C. 20044-0875
8                                      Telephone: (202) 307-0010
                                       Facsimile: (202) 305-4933
9                                      Attorneys for Intervenor-Plaintiff

10   May 12, 2008

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          23

## Certificate of Service

I hereby certify under penalty of perjury that on this 12th day of May, the foregoing "MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR SUMMARY JUDGMENT" was filed electronically in the Court's Electronic Case Filing ("ECF") system.  I understand that notice of this filing will be sent to all counsel by operation of the Court's ECF system and that parties may access this filing through the Court's system.

In addition, I certify under penalty of perjury that on this 12th day of May 2008, the foregoing "MEMORANDUM IN SUPPORT OF UNITED STATES'MOTION FOR SUMMARY JUDGMENT" was mailed, postage prepaid and first class, to the following counsel:

> Larry E. Tanenbaum
>
> Akin Gump Strauss Hauer & Feld LLP
>
> 1333 New Hampshire Ave NW
>
> Washington, DC 20036

/s/ Christian J. Grostic

_____