1   ANNE K. EDWARDS (SBN 110424)
    aedwards@akingump.com
2   AKIN GUMP STRAUSS HAUER & FELD LLP
    2029 Century Park East, Suite 2400
3   Los Angeles, CA 90067-3012
    Telephone:  310-229-1000
4   Facsimile:  310-229-1001

5   JOSEPH P. ESPOSITO (*admitted pro hac vice*)
    WILLIAM E. POTTS, JR. (*admitted pro hac vice*)
6   TERENCE J. LYNAM (*admitted pro hac vice*)
7   jesposito@akingump.com
    bpotts@akingump.com
8   tlynam@akingump.com
    AKIN GUMP STRAUSS HAUER & FELD LLP
9   1333 New Hampshire Avenue, N.W.
    Washington, DC 20036-1564
10  Telephone:  202-887-4000
11  Facsimile:  202-887-4288

    KENNETH R. HEITZ (SBN 53734)
12  BRUCE A. WESSEL (SBN 116734)
13  kheitz@irell.com
    bwessel@irell.com
14  IRELL & MANELLA LLP
    1800 Avenue of the Stars, Suite 900
15  Los Angeles, CA 90067
    Telephone:  310-277-1010
16  Facsimile:  310-203-7199
17  Attorneys for Defendants SLM
    CORPORATION, SALLIE MAE, INC.
18  and SALLIE MAE SERVICING CORPORATION

19

20                    UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
21

22   ANN CHAE, et al.,                    )
                                          )   Case No. CV07-02319 R (RCx)
              Plaintiffs,                  )
23                                        )
     v.                                   )   DEFENDANTS' STATEMENT OF
24                                        )   UNCONTROVERTED FACTS AND
     SLM CORPORATION, et al.,              )   CONCLUSIONS OF LAW
25                                        )
              Defendants,                  )   Assigned to the Hon. Manuel L. Real
26                                        )
     and                                  )   Hearing Date:  June 2, 2008
27                                        )   Time:          10:00 a.m.
     UNITED STATES OF AMERICA              )   Location:      Courtroom 8
28                                        )
              Intervenor-Plaintiff.        )

Defendants Sallie Mae, Inc. ("Sallie Mae"), SLM Corporation and Sallie Mae Servicing Corporation[1] submit the following Statement of Uncontroverted Facts and Conclusions of Law in support of their Motion for Summary Judgment:

## I.   UNCONTROVERTED FACTS

1.   Sallie Mae is engaged in the business of processing and servicing student loans, including student loans authorized and regulated by the Federal Family Education Loan Program ("FFELP").  *See* Exh. 2 at ¶ 3 (Declaration of Jerry Maher).  There are three types of FFELP loans -- (a) Stafford Loans, which are made to students, (b) PLUS Loans, which are made to parents of students and which have also been available to graduate students since 2006, and (c) Consolidation Loans, which are used to consolidate and replace other student loans.  *Id.*; *see also* Am. Complaint ¶¶ 33-36.

2.   Plaintiffs Ann Chae, William Coakley and Carlos Pineda currently have Consolidation Loans serviced by Sallie Mae, and previously had Stafford Loans serviced by Sallie Mae.  *See* Am. Complaint ¶¶ 10, 11, 13; Exh. 44 (Loan Consolidation Statement and Repayment Schedule of Carlos A. Pineda, dated November 22, 2003); Exh. 29 (Payment Schedule of William J. Coakley, dated January 31, 1997); Exh. 35 (Payment Schedule of Ann Y. Roh, dated September 30, 1999).

3.   Plaintiff Hoon Koo has never had a Consolidation Loan, but he previously had four Stafford Loans serviced by Sallie Mae.  *See* Exh. 3 (Extracts of Koo dep. at 11:15-17, 28:20 - 29:1); *see also* Exh. 4 (Payment Schedule of Hoon Koo, dated January 26, 1998; Exh. 5 (Payment Schedule of Hoon Koo, dated January 26, 1998; Exh. 6

---

[1] Defendant Sallie Mae, Inc. is the only one of the named defendants that currently services student loans.  SLM Corporation is a holding company that owns Sallie Mae, Inc.  *See* Exh. 1 at ¶ 4 (Declaration of Mary K. Stewart).  Sallie Mae Servicing Corporation is a corporation that no longer exists.  Sallie Mae Servicing Corporation was converted into Sallie Mae Servicing LP, and Sallie Mae Servicing LP was subsequently merged into Sallie Mae, Inc. on December 31, 2003.  *Id.* at ¶ 5.

(Payment Schedule of Hoon Koo, dated March 4, 1998); Exh. 7 (Payment Schedule of Hoon Koo, dated March 11, 1998 (SLM-0000447-48)); Am. Complaint ¶ 12.

4.   None of the Plaintiffs has ever had a PLUS Loan. *See* Exh. 8 (Extracts of Chae Dep.) at 81:1-5; Exh. 9 (Extracts of Coakley Dep.) at 43:16-25; Exh. 10 (Extracts of Pineda Dep.) at 40:11-16; Exh. 3 (Extracts of Koo Dep.) at 11:4-11, 147:10-14.

### Sallie Mae's Loan Servicing Practices

5.   Sallie Mae services both FFELP loans owned by its affiliates and FFELP loans owned by unaffiliated lenders and entities that hire it to provide loan servicing functions on their behalf.  Loan servicing involves a number of ministerial tasks, including the collection and processing of loan payments, the assessment and collection of late fees, and the issuance of notices required by the federal regulatory program that governs FFELP loans.  Exh. 2 at ¶ 4 (Maher Decl.).

6.   When servicing FFELP loans owned by unaffiliated lenders and entities, Sallie Mae does not retain any of the principal or interest payments made on the loans. Those payments are transferred to the owners of the loans.  Exh. 2 at ¶ 5 (Maher Decl.).

7.   During the period since April 6, 2003, lenders who make FFELP loans have been required to provide borrowers with standardized loan applications and promissory notes prepared by the United States Department of Education ("DOE"), which is the federal agency responsible for regulating FFELP and other student loan programs. *See* Exh. 11 at ¶ 7 (Declaration of Daniel T. Madzelan).  Loan servicers have also been required to provide loan disclosure statements and repayment schedules that conform to DOE regulatory requirements.  20 U.S.C. § 1083; 34 C.F.R. § 682.205.

8.   In servicing FFELP Loans, Sallie Mae charges daily simple interest on the outstanding principal balance of each loan.  Exh. 12 at 5 (Extract of Defendant's Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories). Under this method, interest is charged only for the exact number of days that loan principal is outstanding.  Exh. 14 at 4-5 (Department Of Education, REPAYING YOUR STUDENT LOANS, *available at*

1  http://studentaid.ed.gov/students/attachments/siteresources/RepayingYourStudentLoans
2  English2003_04.pdf).

3       9.   In servicing FFELP Loans, Sallie Mae provides each borrower with a
4  repayment schedule that specifies the borrower's monthly payment due dates and the
5  monthly payment amounts necessary to repay the principal and interest on the loan.  The
6  monthly payment amounts are calculated on the assumption that each payment will be
7  received exactly on the scheduled due date.  *See, e.g.,* Exh. 4–7; Exh. 19 (Federal
8  Consolidation Loan Application and Promissory Note of Ann Y. Roh, dated February
9  24, 2005); Exh. 20 (Federal Consolidation Loan Application and Promissory Note of
10  Carlos A. Pineda, dated August 14, 2003).  If a payment is not received on the exact due
11  date, the daily interest method results in interest being charged only for the number of
12  days since the last payment was received.  *Id.*; *see also* Exh. 13. Thus, if payment is
13  received 20 days after the prior payment, only 20 days of interest is deducted from that
14  payment and the rest is applied to reduce principal.  Similarly, if a payment is received
15  40 days after the last payment, 40 days of interest is deducted from the monthly
16  payment and the rest is used to reduce principal.

17       10. In servicing Stafford Loans, Sallie Mae charges interest from the date the loan
18  funds are disbursed.  If the loan is "unsubsidized," Sallie Mae charges all such interest
19  to the borrower.  If the loan is "subsidized," the federal government pays the interest
20  that accrues during the period the borrower is in school on at least a half-time basis,
21  during other authorized periods of "deferment," and during a six-month "grace period"
22  that immediately follows the date the student stops attending school on a full or half-
23  time basis.  The borrower is charged for interest that accrues during all other periods.
24  *See, e.g.,* Exh. 15 (Application and Promissory Note for Stafford Loan for Hoon Koo,
25  dated August 25, 1993); Exh. 16 (Application and Promissory Note for Stafford Loan
26  for Hoon Koo, dated October 8, 1994); Exh. 17 Application and Promissory Note for
27  Stafford Loan for Hoon Koo, dated September 7, 1995); Exh. 18 (Application and

28

Promissory Note for Stafford Loan for Hoon Koo, dated October 27, 1996).

11. In servicing Consolidation and PLUS Loans, Sallie Mae charges the borrower interest from the date the loan funds are disbursed, and sets the first payment due date to be within sixty days after the loan funds are disbursed. *See, e.g.,* Exh. 19 (Federal Consolidation Loan Application and Promissory Note of Ann Y. Roh, dated February 24, 2005 (SLM-0000070); Exh. 20 (Federal Consolidation Loan Application and Promissory Note of Carlos A. Pineda, dated August 14, 2003 (SLM-0000517)); *see also* Exh. 21 (Federal PLUS Loan Application and Master Promissory Note (SLM-0002058, 0002062)).

12. When permitted by the borrower's promissory note, Sallie Mae charges a late fee on FFELP loan payments that are made more than fifteen days after their scheduled due dates. The late fee is equal to a percentage of the amount that is overdue. Exh. 19–21.

### DOE's Loan Servicing Practices, Web Site
### And Loan Verification Certificate Form

13. DOE is the federal agency responsible for regulating FFELP loans. Exh. 11 (Declaration of Daniel T. Madzelan). DOE also makes loans directly to students and students' parents through the Direct Loan Program, another student loan program authorized by federal statute. Exh. 22 (Extracts of Madzelan Dep.) at 230:4 - 231:11.

14. The Direct Loan Program, like the FFEL Program, provides Stafford Loans, PLUS Loans and Consolidation Loans to students or their parents. *Id.* at 230:4 - 231:11.

15. When it makes Stafford Loans, PLUS Loans and Consolidation Loans under the Direct Loan Program, DOE charges the borrower daily simple interest. *Id.* at 233:4-15.

16. When it pays interest on behalf of a borrower who has a subsidized FFELP loan, DOE pays daily interest to the loan holder. *Id.* at 234:16 - 236:9.

17. DOE makes information about student loans available to borrowers over its web sites. Exh. 23 (Extracts of Marinucci Dep.) at 34:9 - 13.

18. DOE's web site includes a publication entitled "Repaying Your Student Loans," in which DOE states that daily simple interest is used for all types of student loans regulated by the agency. *See id.* at 40:2 - 41:9.

19. DOE's web site states that daily simple interest is used for all federally guaranteed student loans. *See* Exh. 24 (Department Of Education, http://studentaid.ed.gov/PORTALSWebApp/students/english/repaying.jsp).

20. DOE's web site on Direct Loans states that daily simple interest is also used for Stafford, PLUS and Consolidation Loans that DOE makes under the Direct Loan Program. Exh. 25 (Department of Education, www.dlssonline.com/borrower/QctrHelpIndex.do?SectionID=CintDef).

21. When a borrower seeks to replace other student loans with a FFELP Consolidation Loan, the Consolidation lender obtains loan payoff information for the existing loans through a Loan Verification Certificate that has been prepared by DOE and printed by the United States Office of Management and Budget ("OMB"). *See* Exh. 22 (Madzelan dep.); 239:23 - 241:20; Exh. 26 (Federal Loan Verification Certificate, expiration date 1/31/2010). The Loan Verification Certificate requires the existing lenders to provide the amount of "Daily Interest Accrual" on each student loan to be consolidated. *See id.* at p. 1, Item 15. The Loan Verification Certificate also provides the following instruction for calculating the "Daily Interest Accrual" on student loans:

> **Item 15:** Enter the daily interest accrual factor (per diem) used in completing Item 14 for each loan. The interest accrual factor is calculated by multiplying the outstanding principal balance of the loan by the interest rate divided by 365.25 or the actual number of days in the calendar year.

*Id.* at p. 2; *see also* Exh. 27 (Federal Loan Verification Certificate, expiration date 10/31/2006); Exh. 28 (Federal Loan Verification Certificate).

**Plaintiff William Coakley's Loans**

22. Between 1992 and 1995, Plaintiff Coakley obtained a series of Stafford Loans from Bank of America. *See* Exh. 29 (Payment Schedule of William J. Coakley, dated January 31, 1997).

23. On February 22, 1996, Bank of America notified Coakley that it had arranged for Sallie Mae to service his loans. *See* Exh. 30 (Letter from Bank of America to William J. Coakley, dated February 22, 1996).

24. Following Coakley's graduation from college, Sallie Mae sent him a January 31, 1997 payment schedule for his Stafford Loans. Exh. 29; Exh. 9 (Coakley Dep.) at 213:18 - 214:3, 214:16-25. The payment schedule notified Coakley that the first payment on his Stafford Loans would be due on March 4, 1997 and it stated, in part:

> Interest on your loans accrues on a daily, simple interest basis.
>
> *   *   *
>
> **Late charge:** If a payment is late by more than 10 days, you may be subject to a late charge of up to 6% of the payment as authorized by your promissory note.

Exh. 29.

25. Coakley has testified that, when he received the January 31, 1997 payment schedule for his Stafford Loans, he was aware that interest on his Stafford Loans was accruing on a daily basis and that he could be charged a late fee for payments that were made more than ten days after their scheduled due dates. Exh. 9 (Coakley Dep.) at 215:17 - 216:1, 219:3-15.

26. Six days after the first payment due date on his Stafford Loans, Coakley submitted an application for a Consolidation Loan to replace all of his Stafford Loans. Coakley signed the Application and Promissory Note for his Consolidation Loan on March 10, 1997. Exh. 31 Consolidation Loan Application/Promissory Note of William J. Coakley, dated March 10, 1997); Exh. 9 (Coakley Dep.) at 47:9-11, 55:8 – 57:6.

27. Coakley's Consolidation Loan Application and Promissory Note states, in

part:

> **I**, the undersigned borrower, **promise** to pay to the Student Loan Marketing Association (Sallie Mae) . . . such loan amount as is advanced on my behalf, **to pay daily simple interest on the unpaid principal balance** thereof . . ., **and to pay all late charges**. . . .   My signature below certifies that I have read, understood and agreed to the conditions and authorizations stated in the terms herein and on the reverse side hereof . . . . [Exh. 31 at SLM-0000185 (emphasis added)].

> \*   \*   \*

> 1. . . . . This loan will bear daily simple interest . . . . [*Id.* at SLM-0000186].
> 2.  I will pay all interest that accrues on this loan commencing on the date of disbursement.  [*Id.*].

> \*   \*   \*

> My first payment will be due within sixty days of the date of disbursement of my [Consolidation Loan] Account unless I am eligible for deferment. [*Id.*]

> \*   \*   \*

> **Late Charge**  Sallie Mae may collect from me a late charge if I fail to pay all or part of a required installment within 10 days after it is due . . . .  A late charge may not exceed 6 cents for each dollar of each late installment.  [*Id.*].

28. Coakley has testified that, when he signed his Consolidation Loan Application and Promissory Note on March 10, 1997, he understood and agreed that:

a.  He was promising to pay daily simple interest on his loan.  Exh. 9 (Coakley

1   Dep.) at 58:16 - 59:25, 61:25 - 62:23.

2   b. He was promising to pay all interest that accrued from the date his loan funds

3   were disbursed. *Id.* at 61:8-24.

4   c. His first payment would be due within sixty days after his loan funds were

5   disbursed. *Id.* at 65:22 - 67:3.

6   d. He was promising to pay all late charges that might be imposed. *Id.* at 60:1-

7   14, 64:5 - 65:4.

8   e. His Consolidation Loan would be governed by federal law. *Id.* at 57:19 -

9   58:15.

10   29. As a result of Coakley's periodic failures to make loan payments on time,

11   Sallie Mae has sent him at least fourteen notices reminding him that he could be charged

12   late fees for late payments. These notices were sent to him between April 1999 and

13   September 2006. *See* Exh. 32 (Late Notices sent to William J. Coakley between April

14   1999 and September 2006); Exh. 9 (Coakley Dep.) at 159:1 - 161:16, 163:24 - 165:19,

15   166:4 - 168:13, 174:6 - 178:5.

16                              **Plaintiff Ann Chae's Loans**

17   30. In 1997 and 1998, Plaintiff Ann Chae obtained a series of Stafford Loans

18   from Wells Fargo Bank. Exh. 33 (Application and Promissory Note for Federal Stafford

19   Loan of Ann Y. Roh, dated August 26, 1997); Exh. 34 (Application and Promissory

20   Note for Federal Stafford Loans of Ann Y. Roh, dated August 17, 1998); Exh. 8 (Chae

21   Dep.) at 81:20-23, 105:25 - 107:7, 120:24 - 121:24.

22   31. To obtain her 1997 and 1998 Stafford Loans, Chae signed two Applications

23   and Promissory Notes which stated, in part:

24

25                  Interest accrues on the unpaid principal balance of each loan

26                  from the date of disbursement by the lender until the entire

27                  principal balance is paid in full. I agree to pay all interest

28                  charges on my unsubsidized Federal Stafford Loan. I agree to

> pay all interest charges on my subsidized Federal Stafford Loan
> except interest payable by the federal government under the
> Act.
>
> *   *   *
>
> If I fail to make any part of an installment payment within 10
> days after it becomes due, the holder may collect from me a late
> charge not to exceed 6% of each late installment.

Exh. 33, 34.

32. Chae has testified that, when she signed her 1997 and 1998 Stafford Loan Applications and Promissory Notes, she understood that:

> a.  Interest would begin to accrue on her unsubsidized Stafford Loans from the
> dates the loan funds were disbursed, and she would have to pay that interest.
> Exh. 8 (Chae Dep.) at 113:3 - 114:5, 122.21 - 124:13.

> b.  She could be charged a late fee if she made a payment more than 10 days after
> its scheduled due date. *Id.* at 112:3-23, 124:14 - 125:5.

33. Following her completion of school, Sallie Mae sent Chae a September 30, 1999 payment schedule for her Stafford Loans.  Exh. 35 (Payment Schedule of Ann Y. Roh, dated September 30, 1999); Exh. 8 (Chae Dep.) at 134:20 - 135:2.  The payment schedule notified Chae that the first payment on her Stafford Loans would be due on December 20, 1999 and it stated, in part:

> Interest on your loans accrues on a daily, simple interest basis.
>
> *   *   *
>
> **Late charge** – You may be charged a late fee, not to exceed 6%
> of the installment amount of your loan(s), if you fail to make
> your payment within 15 days after it is due.

Exh. 35; Exh. 8 (Chae Dep.) at 136:19-25.

34. Chae has testified that, when she received her September 30, 1999 payment

schedule, she understood that:

> a. If she did not make her loan payments on the scheduled due dates, the amount of interest she would pay might vary from the estimated interest listed on her payment schedule. Exh. 8 (Chae Dep.) at 139:6-25.
>
> b. She could be charged a late fee if she did not make her payments on time. *Id.* at 141:3 - 142:4.

35. On February 24, 2005, Chae signed an Application and Promissory Note for a Consolidation Loan to replace her Stafford Loans. Exh. 19; Exh. 8 (Chae Dep.) at 158:4-21; Exh. 35. Chae's Consolidation Loan Application and Promissory Note was a DOE-prepared form bearing the stamp of the United States Office of Management and Budget. Exh. 19.

36. Chae's Application and Promissory Note for her Consolidation Loan stated, in part:

> At or about the time my Federal Consolidation Loan is disbursed, a disclosure statement and repayment schedule ("disclosure") will be provided to me. This disclosure will identify my Federal Consolidation Loan amount and additional terms of the loan. If I have questions about the information disclosed, I will contact the lender. If the information in this Note conflicts with information in the disclosure, the specific terms and information in the disclosure apply to my loan. [*Id.* at 5].
>
> Interest accrues on the unpaid principal balance of my Federal Consolidation Loan from the date of disbursement by the lender until the entire principal balance is paid in full. [*Id.*].
>
> I will be responsible for the interest that begins accruing upon

disbursement of my loan.  [*Id*.].

Except for any portion of the Federal Consolidation Loan attributable to a HEAL Loan, this loan will bear simple interest at an annual rate that is fixed for the term of the loan.  [*Id*.].

The lender may collect from me: (1) a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after it becomes due . . . . [*Id*.].

I am obligated to repay the full amount of the loan made under this Note and the interest that accrues on that amount. Repayment begins upon disbursement of the loan, and my first payment will be due within 60 days after the disbursement. [*Id*.].

Payments submitted by me or on my behalf (exclusive of refunds) may be applied first to late charges and collection costs that are due, then to accrued interest that has not been capitalized, and finally to the principal amount.  [*Id*.].

Interest will be charged from the date my Federal Consolidation Loan is disbursed.  It is my responsibility to pay interest on my loan.  [*Id*. at 8].

37. Before the loan funds for Chae's Consolidation Loan were disbursed, Sallie Mae sent her the Consolidation Loan Disclosure Statement and Repayment Schedule referenced in her promissory note.  Exh. 36 (Loan Consolidation Disclosure Statement

1 and Repayment Schedule of Ann Y. Roh, dated March 29, 2005); Exh. 8 (Chae Dep.) at

2 173:10-25.  The Disclosure Statement and Repayment Scheduled stated:

3     This statement provides the terms and conditions for repayment

4     of the consolidation loan between you and the consolidating

5     lender listed.

6 Exh. 36 at 1; Exh. 8 (Chae Dep.) at 173:10 - 174:13.  It also informed her that interest

7 on her Consolidation Loan would begin to accrue on April 1, 2005, her first payment

8 would be due on May 28, 2005, her subsequent payments would be due on the 28th of

9 each month, and her estimated finance charges over the twenty-year life of the loan

10 would be $9,698.16.  Exh. 36.  It additionally explained that:

11     [The Finance Charges section on the schedule] [i]ndicates an

12     estimate of the total finance charge – the actual finance charge

13     will depend upon the timely payment of amounts owed and the

14     use of deferment and/or forbearance provisions of the Federal

15     Loan Consolidation Loan Program. [*Id*. at SLM-0000076].

16

17     TOTAL OF PAYMENTS:  Total of payments is based upon the

18     assumption that all payments will be made on the scheduled

19     due dates.  Accordingly, if payments are made earlier than

20     scheduled, less interest will be paid than is contemplated by the

21     schedule.  If payments are made late, additional interest will

22     accrue beyond the scheduled payment due date.  The amount of

23     the final payment will be adjusted upward or downward to

24     reflect the balance due based upon the actual payment dates.

25     [*Id*. at SLM-0000077].

26

27     EXPLANATION OF FEES:  If a payment is late by more than

28     15 days, you may be subject to a late charge not to exceed 6%

of the payment.  [*Id.*].

38. Chae has testified that, when she received her disclosure statement in 2005, she understood that:

> a.  The estimated finance charge was based on the assumption that each payment would be made on a timely basis.  Exh. 8 (Chae Dep.) at 179:9 - 180:9.

> b.  She could be charged a late fee of up to 6% of the late payment if she made a payment more than 15 days past its scheduled due date.  *Id.* at 183:6 - 184:1.

**Plaintiff Carlos Pineda's Loans**

39. In 1990, Plaintiff Carlos Pineda obtained a Stafford Loan from Great Western Savings.  Exh. 37 (Application/Promissory Note for Stafford Student Loan of Carlos A. Pineda, dated October 30, 1990); Exh. 10 (Pineda Dep.) at 134:7 - 135:1, 140:2-5.  No payments were made on this loan between July 13, 1995 and June 20, 2003 due to deferments and forbearances that Mr. Pineda requested.  Exh. 38 (Declining Balance Payment History for Sallie Mae Loan 2 of Carlos A. Pineda, dated October 30, 1990); Exh. 39 (Letter to Carlos A. Pineda, dated March 15, 2003); Exh. 10 (Pineda Dep.) at 35:20-23, 154:1 - 157:10, 157:18 - 158:3, 169:24 - 170:21, 171:3 - 172:15.

40. Pineda has testified that he did not suffer any harm on his 1990 Stafford Loan.  Exh. 10 (Pineda Dep.) at 157:18 - 158:3, 159:2-5.

41. In 1998, 1999, 2000 and 2001, Pineda obtained a series of Stafford Loans from Chase Ed Finance.  Exh. 40 (Application and Promissory Note for Federal Stafford Loan of Carlos A. Pineda, dated August 31, 1998); Exh. 41 (Application and Promissory Note for Federal Stafford Loan of Carlos A. Pineda, dated July 15, 1999); Exh. 42 (Federal Stafford Loan Master Promissory Note of Carlos A. Pineda, dated July 12, 2000); Exh. 43 (Federal Stafford Loan Master Promissory Note of Carlos A. Pineda, dated July 23, 2001); Exh. 10 (Pineda Dep.) at 172:20 - 173:9, 174:3-22, 186:23 - 187:6, 203:2 - 204:2, 215:7-14.  Mr. Pineda never made any payments on those loans before he

replaced them with a Consolidation Loan.  *Id.* at 234:7-11, 235:3-17, 239:22 - 240:3.

42. On August 14, 2003, Pineda submitted an application and promissory note for a Consolidation Loan to replace all of his existing student loans.  Exh. 20; Exh. 10 (Pineda Dep.) at 48:11 - 49:6.  The application and promissory note stated, in part:

> At or about the time my former loans are discharged, a disclosure statement and repayment schedule ("disclosure") will be issued to me identifying the amount of the Federal Consolidation Loan and additional terms of the loan.  If I have questions concerning the information disclosed, I will contact the lender.  If the disclosure includes specific terms and information about my loan that are different from the terms and information in the Note, the specific terms and information on the disclosure apply to my loan.  Exh. 20 at SLM-0000517.

> Interest accrues on the unpaid principal balance of my Federal Consolidation Loan from the date of disbursement by the lender until the loan is paid in full.  I agree to pay interest on the principal amount of my loan from the date of disbursement until the loan is paid in full except interest payable by the federal government under the Act.  [*Id.*].

> Except for any portion of the Federal Consolidation Loan attributable to a HEAL, the loan will bear simple interest at an annual rate which is fixed for the term of the loan. [*Id.*].

> The lender may collect from me: (i) a late charge for each late installment payment if I fail to make any part of a required

installment payment within 15 days after it becomes due . . . .
[*Id.*].

I am obligated to repay the full amount of the loan made under
this Note and the interest that accrues on that amount.
Repayment shall begin upon disbursement; the first payment
will be due within 60 days after the disbursement of my Federal
Consolidation Loan.  Payments will be scheduled in monthly
installments according to the disclosure.  Payments submitted
by me or on my behalf (exclusive or refunds) may be applied
first to late charges and collection costs that are due, then to
accrued interest that has not been capitalized, and finally to the
principal amount.  [*Id.*].

43. Before the loan funds for Pineda's Consolidation Loan were disbursed, Sallie Mae sent him the Consolidation Loan Disclosure Statement and Repayment Schedule referenced in his promissory note.  Exh. 44 (Loan Consolidation Statement and Repayment Schedule of Carlos A. Pineda, dated November 22, 2003).  The Disclosure Statement and Repayment Scheduled stated:

This statement provides the terms and conditions for repayment
of the consolidation loan between you and the consolidating
Lender listed.

*Id.* at SLM-0000520.  It also informed him that interest on his Consolidation Loan would begin to accrue on November 28, 2003, his first payment would be due on January 27, 2004, his subsequent payments would be due on the 27th of each month, and his estimated finance charges over the twenty-five year life of the loan would be $19,737.39.  *Id.*  It additionally explained that:

[The Finance Charges section on the schedule] [i]ndicates an
estimate of the total finance charge – the actual finance charge

15

will depend upon the timely payment of amounts owed and the use of deferment and/or forbearance provisions of the Federal Loan Consolidation Loan Program. [Exh. 44 at SLM-0000520].

TOTAL OF PAYMENTS:  Total of payments is based upon the assumption that all payments will be made on the scheduled due dates.  Accordingly, if payments are made earlier than scheduled, less interest will be paid than is contemplated by the schedule.  If payments are made late, additional interest will accrue beyond the scheduled payment due date.  The amount of the final payment will be adjusted upward or downward to reflect the balance due based upon the actual payment dates. [Exh. 44 at SLM-0000521].

EXPLANATION OF FEES:  If a payment is late by more than 15 days, you may be subject to a late charge not to exceed 6% of the payment.  [*Id.*].

PAYMENT PROCESSING:  You may prepay your loan at any time without penalty.  All payments are posted effective the date they are received . . . .  Interest accrues daily based on the outstanding principal balance of your loan(s); therefore, future interest which has not yet accrued cannot be prepaid.  In order to reduce the total interest you pay over the life of your loan(s), you should continue to remit payments while in a paid-ahead status. [*Id.*].

44. Pineda has testified that he has no complaint about how Sallie Mae set the first payment due date on his Consolidation Loan.  Exh. 10 (Pineda Dep.) at 47:16-23.

45. Pineda has never been late in making a payment on his Consolidation Loan, and has never been charged "extra" interest for making a payment after its scheduled due date. *Id.* at 81:20 - 82:1, 108:20 - 109:3, 111:24 - 114:7.

46. Sallie Mae has never charged Pineda a late fee. *See* Exh. 45 (Excerpt from Plaintiff Carlos A. Pineda's Supplemental Responses to Defendant Sallie Mae, Inc.'s First Set of Interrogatories); Exh. 10 (Pineda Dep.) at 41:10-15, 42:12-17, 43:7-10, 44:13 - 45:11.

### Plaintiff Hoon Koo's Loans

47. Plaintiff Hoon Koo had four Stafford Loans, which he obtained pursuant to Applications and Promissory Notes he signed on August 25, 1993, October 8, 1994, September 7, 1995 and October 27, 1996.  Exh. 15–18; Exh. 3 (Koo Dep.) at 79:8-13, 81:17-23, 82:2-19, 88:12-25, 92:8-24.

48. Koo obtained his 1993 and 1994 Stafford Loans from Wells Fargo and his 1995 and 1996 Stafford Loans from COLLEGECRED/TIAA/TRU.  Exh. 15–18.

49. Koo's 1993 Stafford Loan Application and Promissory Note stated, in part:

> I agree to pay an amount equivalent to simple interest . . . on the
> unpaid principal balance from the date of disbursement until the
> entire principal sum and accrued interest are paid in full, (2)
> however, the U.S. Secretary of Education ("Secretary") will pay
> the interest that accrues on this loan prior to repayment status
> and during any deferment, if it is determined that I qualify to
> have such payments made on my behalf under the regulations
> governing the Guaranteed Student Loan Program.
>
> \*     \*     \*
>
> If permitted by state law, my lender may collect from me a late
> charge if I fail to pay all or part of a required installment
> payment within 10 days after it is due . . . .  A late charge may
> not exceed 6 percent of each late installment.

Exh. 15.

50. Koo's 1994, 1995 and 1996 Stafford Loan Applications and Promissory Notes each stated, in part:

> Interest accrues on the unpaid principal balance of each loan
> from the date of disbursement by the lender until the entire
> principal balance is paid in full.  I agree to pay all interest
> charges on my unsubsidized Federal Stafford Loan.  I agree to
> pay all interest charges on my subsidized Federal Stafford Loan
> except interest payable by the federal government under the
> Act.
>
> *    *    *
>
> If I fail to make any part of an installment payment within 10
> days after it becomes due, the holder may collect from me a late
> charge not to exceed 6% of each late installment.

Exh. 16-18.

51. Koo does not know whether he read any of his Stafford Loan applications and promissory notes before he signed them.  Exh. 3 (Koo Dep.) at 84:3 - 85:15, 89:1-22, 90:22 - 91:2, 92:25 - 93:19.

52. Koo's Stafford Loans were all subsidized loans.  Exh. 7; Exh. 46 (Letter to Hoon Koo, dated March 31, 1998); Exh. 3 (Koo Dep.) at 12:1-8.

53. Because Koo's Stafford Loans were subsidized loans, he did not have to pay any interest that accrued on them while he was still in school.  Exh. 3 (Koo Dep.) at 12:9-14.

54. Because Koo's Stafford Loans were subsidized loans, he also did not have to pay any interest that accrued on them during the six-month grace period following his graduation from school.  Exh. 15–18.

55. Plaintiff Koo's grace period on his Stafford Loans ended in March 1998, and his first payment date was scheduled for April 21, 1998.  Exh. 7.

56. Before his grace period ended, and before he became responsible for paying any interest on his Stafford Loans, Koo was sent payment schedules which stated, in part:

> Interest on your loans accrues on a daily, simple interest basis.
>
> \*   \*   \*
>
> [The estimate of accrued interest to be paid on his loans] assumes payments are made as scheduled.
>
> \*   \*   \*
>
> You may be charged a late fee, not to exceed 6% of the installment amount due on your loan(s), if you fail to make your payment within 15 days after it is due.

Exh. 4–7.

57. From August 21, 1998 until he finished paying the loans, Plaintiff Koo made his Stafford Loan payments through a Direct Repay program that automatically transferred his monthly loan payment from his bank account to Sallie Mae's account on the day the loan payment was due.  Exh. 47 (Letter to Hoon Koo, dated July 22, 1998); Exh. 3 (Koo Dep.) at 42:4-14.

58. Before he started making payments on his Stafford Loans in 1998, Plaintiff Koo was aware that he could be charged a late fee if he failed to make a payment within fifteen days of its scheduled due date. *Id*. at 23:8-14, 26:14-20, 29:2-14, 34:6-18.

59. Sallie Mae never charged Koo a late fee. *Id*. at 11:18-25, 64:11-14, 143:20-25.

## II.   CONCLUSIONS OF LAW

### A.   SUMMARY JUDGMENT STANDARD

1.   Summary judgment must be granted if the papers show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Lindsey v. Tacoma-Pierce County Health Dep't*, 195 F.3d 1065, 1068 (9th Cir. 1999).  It is the moving party's burden to establish that

1  there exists no genuine issue of material fact and that the moving party is entitled to

2  judgment as a matter of law. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th

3  Cir. 1978).  Once the moving party demonstrates the absence of a genuine issue of

4  material fact, the nonmoving party must come forward with admissible evidence

5  creating a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25

6  (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find

7  for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus.*

8  *Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

9        **B.**    **LENDING PRACTICES AT ISSUE**

10           **Daily Simple Interest Is Required By The DOE**

11      2.  All of the loans at issue in this case are regulated by DOE, which is statutorily

12  authorized and required to regulate the Federal Family Education Loan Program

13  ("FFELP").  *See* 20 U.S.C. § 1082(a).

14      3.  In addition to regulating FFELP Loans, DOE is statutorily authorized and

15  required to make student loans under the Direct Loan Program.  20 U.S.C. § § 1087a,

16  1087b.  By statute, the Stafford, PLUS and Consolidation Loans that DOE makes under

17  the Direct Loan Program must have "the same terms, conditions, and benefits" as the

18  Stafford, Consolidation and PLUS Loans issued under FFELP.  20 U.S.C. § 1087e(a)(1).

19      4.  The Higher Education Act ("HEA") requires DOE to "prescribe common

20  application forms and promissory notes, or master promissory notes, to be used for

21  applying for [FFELP] loans."  20 U.S.C. § 1082(m)(1).  Pursuant to this statutory

22  mandate, DOE has issued regulations which require lenders and loan guarantee agencies

23  to use federally approved loan application forms and promissory notes.  *See* 34 C.F.R. §

24  682.401(d)(3) ("The guaranty agency must use common application forms, promissory

25  notes, Master Promissory Notes (MPN), and other common forms approved by the

26  Secretary.").

27      5.  The HEA and DOE's regulations also prescribe the contents of disclosure

28  statements that lenders must provide to student loan borrowers.  20 U.S.C. § 1083; 34

C.F.R. § 682.205. The HEA states that disclosure statements must inform borrowers of "the projected total of interest charges which the borrower will pay on the loan or loans, <u>assuming that the borrower makes payments exactly in accordance with the repayment schedule</u>." 20 U.S.C. § 1083(b)(8) (emphasis added). DOE's regulations similarly state that lenders must inform borrowers of "[t]he estimated total amount of interest to be paid on the loan, <u>assuming that payments are made in accordance with the repayment schedule</u>." 34 C.F.R. § 682.205(c)(2)(viii) (emphasis added).

6.    Stafford loans can be either subsidized or unsubsidized. 20 U.S.C. § § 1078, 1078-8. When loans are subsidized, the federal government is responsible for paying the interest that accrues while the borrower is in school on at least a half-time basis, during a six-month grace period immediately following the date the borrower stops attending school on at least a half-time basis, and during certain other authorized periods of deferment. 20 U.S.C. § 1078; 34 C.F.R. § 682.210(a). When the federal government is paying interest on behalf of a FFELP loan borrower, DOE's regulations require the government to pay the lender daily interest on the loans. *See* 34 C.F.R. § 682.304.

7.    Pursuant to its statutory authority, the DOE provides borrowers and lenders with information about student loans through its web sites. Through its web sites, DOE has informed borrowers and lenders that daily simple interest is charged on all student loans, including all student loans made under the FFELP and all student loans made under the Direct Loan Program. DOE's web site provides the following explanation of how interest must be calculated on all student loans regulated by the agency:

> <u>Interest on all loans borrowed under [Department of Education] programs is calculated on a simple daily basis.</u> The following formula demonstrates how the simple interest is calculated between payments:
> Average daily balance between payments

x Interest Rate

x (Number of days between payments/365.25)

How interest accrues between payments made on April 15 and May 15, for example:

| | |
|---|---|
| Average daily balance: | $10,000 |
| Interest rate: | x .08 |
| Days between payments (30/365.25): | x .08214 |
| Monthly Interest: | $65.71 |

The loan holder first applies your payment to late charges or collection costs on your account (if any), then to the interest that has accumulated (accrued interest).  The remainder of the payment is then applied to the principal balance.  <u>Just as the accrued interest varies monthly (depending on how many days elapse between the receipt of payments)</u>, the amount of a payment applied to accrued interest and the amount applied to principal also will vary monthly.

*See* DEPARTMENT OF EDUCATION, REPAYING YOUR STUDENT LOANS 4–5, *available at* http://studentaid.ed.gov/students/attachments/siteresources/RepayingYourStudentLoansEnglish2003_04.pdf (emphasis added) (last visited May 9, 2008).

8.   DOE's web site also provides the following explanation of how interest is calculated on all federally guaranteed student loans:

**How can I calculate the amount of interest on my own?**

To determine the amount of interest you will be required to pay on [sic] each month, use the following formula called the Simple Daily Interest formula:

**Simple Daily Interest Formula**

Number of days since last payment

22

X

Principal Balance Outstanding

X

Interest Rate Factor

=

Interest Amount

**Practice Example:** Let's say the remaining balance on your loan is $9500.00. You sent in a payment of $160.00, 32 days after your previous month's payment. Your interest rate is 8.25% (interest rate factor is .00022587).

32 (days) X $9500.00 (PBO) X .00022587 (interest rate factor)

You would pay $68.66 toward interest and $91.34 toward the principal balance. This would leave you with a loan balance of $9408.66 after the $160.00 payment was applied.

**Interest Rate Factor**

The interest rate factor is used to calculate the amount of interest that accrues on your loan. It is determined by dividing your loan's interest rate by 365.25 (the number of days in a year). See the following table to see some examples of interest rate factors.

| Interest Rate | Converted To Decimals | Divide By 365.25 | Interest Rate Factor |
|---|---|---|---|
| 8.99% | .0899 | .0899/ 365.25 | .00024613 |
| 8.25 % | .0825 | .0825/ 365.25 | .00022587 |
| 7.59% | .0759 | .0759/ 365.25 | .00020780 |

**Why does the amount of interest I pay vary from month to month?**

Interest accrues on a daily basis on your loans.  Factors such as: the number of days between your last payment, the interest rate, and the amount of your loan balance, determine the amount of interest that accrues each month.

You can calculate how much will accrue on your loan by using the Simple Daily Interest Formula.

*See* http://studentaid.ed.gov/PORTALSWebApp/students/english/repaying.jsp (last visited May 9, 2008).

    9.   Consistent with its statutory obligation to use the same terms for Direct Loans that are used in FFELP Loans, DOE's web site for Direct Loans similarly explains to borrowers that daily simple interest is charged on all of the student loans it makes under the Direct Loan Program.  The website states:

**Why does the amount of interest I pay vary from month to month?**

Interest accrues on a daily basis on your loans.  Factors such as: the number of days between your last payment, the interest rate, and the amount of your loan balance, determine the amount of interest that accrues each month.  You can calculate how much will accrue on your loan by using the Simple Daily Interest Formula.

**How can I calculate the amount of interest on my own?**

To determine the amount of interest you will be required to pay on [sic] each month, use the following formula called the Simple Daily Interest formula:

**Simple Daily Interest Formula**

Number of days since last payment

X

Principal Balance Outstanding

X

Interest Rate Factor

=

Interest Amount

**Practice Example:** Let's say the remaining balance on your loan is $9500.00. You sent in a payment of $160.00, 32 days after your previous month's payment. Your interest rate is 8.25% (interest rate factor is .00022587).

32 (days) X $9500.00 (PBO) X .00022587 (interest rate factor)

You would pay $68.66 toward interest and $91.34 toward the principal balance. This would leave you with a loan balance of $9408.66 after the $160.00 payment was applied.

*See* https://www.dlssonline.com/borrower/QctrHelpPage.do?cmd=initializeContext&APageID=QctrCintA007 (last visited May 9, 2008); and https://www.dlssonline.com/borrower/QctrHelpPage.do?cmd=initializeContext&APageID=QctrCintA002 (last visited May 9, 2008).

Pursuant to its statutory mandate under 20 U.S.C. § 1082(m), the DOE has issued a standard Loan Verification Certificate ("LVC") that all lenders must use when obtaining loan pay-off information from other lenders for purposes of replacing existing FFELP Loans with a Consolidation Loans. *See* Federal Consolidation Loan Verification Certificate, *available at* http://www.ifap.ed.gov/dpcletters/attachments/FP0705AttECORRECTEDLVC.pdf. This DOE-mandated LVC requires the owners of existing FFELP loans to calculate, and the Consolidating Lender to pay, the accrued, daily simple interest on the loans being replaced with a Consolidation Loan. *Id.*

10. DOE's regulatory scheme authorizes and requires lenders and loan servicers to charge daily simple interest on FFELP Loans.

11. Nothing in the HEA or DOE's regulations prohibits Sallie Mae from charging daily simple interest on FFELP Loans.

25

12. No statute, regulation or other legal authority requires Sallie Mae to charge interest pursuant to the pre-computed approach plaintiffs advocate.

### Allowing Consolidation And PLUS Loan Borrowers 60 Days To Make Their First Payment Is Authorized By The DOE

13. On Consolidation and PLUS Loans, DOE's required promissory notes state that interest accrues from the date loan funds are disbursed and permit lenders to set the first payment due date up to 60 days after disbursement.

14. The HEA states that "Repayment of principal on [PLUS] loans . . . shall commence not later than 60 days after the date such loan is disbursed by the lender . . . ." 20 U.S.C. § 1078-2(d)(1)(A)(i).

15. "Repayment of a consolidation loan shall commence within 60 days after all holders have . . . discharged the liability of the borrower on the loans selected for consolidation." 20 U.S.C. § 1078-3(c)(4).

16. DOE regulations also mandate that the first payment is due within 60 days after the date the loan is disbursed. 34 C.F.R. § 682.209(a).

17. Nothing in the HEA or DOE's regulations prohibits Sallie Mae from charging interest from the date of loan disbursement or from setting first payment dates on Consolidation and PLUS Loans up to 60 days after disbursement.

18. No statute, regulation or other legal authority requires Sallie Mae to set first payment dates on Consolidation and PLUS Loans less than 60 days after the loan funds are disbursed.

### Late Fees Are Permitted By Federal Law

19. DOE's regulations authorize lenders to charge late fees for loan payments that are made more than fifteen days after their scheduled due dates. 34 C.F.R. § 682.202(f)(1) ("If authorized by the borrower's promissory note, the lender may require the borrower to pay a late charge. . . . This charge may not exceed six cents for each dollar of each late installment.")

20. DOE's regulations also permit lenders to apply loan payments to any late

charges that may be due, before applying the balance of the payment to the interest that has accrued on the loan.  34 C.F.R. § 682.209(b)(1) ("The lender may credit the entire payment amount first to <u>any late charges</u> accrued or collection costs and then to <u>any outstanding interest</u> and then to outstanding principal." ) (emphasis added).

21.  DOE's publications confirm that late payments can lead to both late fees and the additional accrual of interest.  REPAYING YOUR STUDENT LOANS states "If you're delinquent, excess interest will accrue.  You might also have collection charges or late fees."  REPAYING YOUR STUDENT LOANS at 31.

22.  Sallie Mae's practice of charging late fees for loan payments that are more than 15 days after their scheduled due dates is authorized by DOE regulation and by the promissory notes signed by FFELP Loan borrowers.

23.  No statute, regulation or other legal authority prohibits Sallie Mae from assessing late fees for loan payments that are made more than 15 days after their scheduled due dates.

24.  Cal. Civ. Code § 1671 has no relevance to Plaintiffs' claims.  That section is "not applicable where the validity of the liquidated damages provision is governed by federal law or a regulation adopted pursuant thereto."  *See* Cal. Civ. Code 1671(a) and Law Revision Commission Comments to Cal. Civ. Code § 1671.

## C.     PLAINTIFFS CANNOT MAINTAIN AN ACTION FOR ANY ALLEGED DEFICIENCIES IN THE DISCLOSURE OF THEIR LOAN TERMS

25.  The HEA specifically exempts FFELP Loans from any disclosure requirements that might exist under state law.  20 U.S.C. § 1098g ("Loans made, insured, or guaranteed pursuant to a program authorized by this subchapter shall not be subject to any disclosure requirements of any State law." )

26.  The HEA precludes FFELP Loan borrowers from seeking damages for a lender's or loan servicer's failure to comply with the HEA's disclosure requirements.  20 U.S.C. § 1083(c)(2).

27. As a matter of law, Plaintiffs may not maintain an action against Sallie Mae for alleged deficiencies in the language of loan applications, promissory notes, disclosure statements, payment schedules or billing statements relating to FFELP Loans.

## D.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON EACH CAUSE OF ACTION

### Cal. Bus. & Prof. Code § 17200, *et seq.*

28. The Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, prohibits "any unlawful, unfair or fraudulent business act . . . ." Section 17204 of the Cal. Bus. & Prof. Code states that "[a]ctions for any relief pursuant to this chapter shall be prosecuted exclusively . . . by any person who has suffered injury in fact and has lost money or property as a result of [such] unfair competition."

29. A person seeking to assert a claim under the UCL must show that (1) she has suffered actual injury in fact, and (2) such injury occurred as a result of the defendant's alleged violation of the UCL. *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005).

30. Under California law, a plaintiff cannot assert a UCL claim if the challenged practice is authorized by federal or state law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 83 Cal. Rptr. 2d 548, 562 (Cal. 1999). *See also Williams v. Washington Mut. Bank*, No. CIV 07-2418 WBS GGH, 2008 WL 115097, *4 (E.D. Cal. Jan. 11, 2008) (increasing APR in the event of a default if notice was initially provided in disclosures was permissible under federal law and could not be the basis of a UCL action); *Augustine v. FIA Card Servs., N.A.*, 485 F. Supp. 2d 1172, 1176 (E.D. Cal. 2007) (holding that a section 17200 claim was barred where defendants' actions complied with federal regulations governing disclosures); *Byars v. SCME Mortgage Bankers, Inc.,* 109 Cal. App. 4th 1134, 1147-48, 135 Cal. Rptr. 2d 796, 805 (Cal. Ct. App. 2003) (where particular "conduct has been deemed lawful," it cannot provide the basis for a section 17200 cause of action).

31. The three practices being challenged in this case are all authorized by DOE's regulatory scheme, and cannot be considered "unlawful, unfair or fraudulent" within the meaning of the UCL.

## Breach of Contract

32. Under California law, the elements of breach of contract are 1) the existence of a contract, 2) the plaintiff's performance or excuse for nonperformance, 3) the defendant's breach, and 4) injury to the plaintiff therefrom. *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388, 272 Cal. Rptr. 387, 395 (Cal. Ct. App. 1990).

33. The loan applications and promissory notes at issue in this case, and the disclosures that were incorporated into those documents by reference, stated that Sallie Mae would or could employ the three practices that Plaintiffs are challenging.

34. No provision in the contracts at issue prohibited Sallie Mae from charging daily simple interest from changing late fees, from charging late fees, or from setting first payment dates up to 60 days after disbursement.

## Breach of Implied Covenant of Good Faith and Fair Dealing

35. A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must establish the following elements: (1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct. *Marks v. Chicoine*, No. C 06-06806 SI, 2007 WL 1056779, at *5 (N.D. Cal. April 6, 2007) (quoting *Garey/Philadelphia, Ltd. v. Yoshinoya West, Inc.*, 2006 LEXIS 11533, at *1, *11–12 (Cal. Ct. App. Dec. 21, 2006)).

36. There is no reported decision in which a California court has held that the covenant of good faith and fair dealing prohibits a contracting party from doing what is permitted by contract. *See, e.g., Carma Developers (Cal.), Inc. v. Marathon Dev. Cal.,*

1   *Inc.*, 2 Cal. 4th 342, 374, 6 Cal. Rptr. 2d 467, 485 (Cal. 1992).

2       37. The FFELP loan documents at issue in this case permitted Sallie Mae to

3   employ the three loan servicing practices that are being challenged. By employing

4   those practices, Sallie Mae did not breach any duty of good faith and fair dealing so

5   plaintiffs cannot recover on their claim for breach of implied covenant of good faith and

6   fair dealing.

7   ## Consumer Legal Remedies Act

8       38. The right to bring a private cause of action under the  Consumer Legal

9   Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") is limited to consumers who

10  suffer "damage as a result of the use or employment by any person of a method, act, or

11  practice declared to be unlawful by [California Civil Code] Section 1770." Cal. Civ.

12  Code § 1780. The elements of a claim under the CLRA are: (1) that the defendant

13  engaged in a prohibited practice; (2) the complained of conduct occurred in the context

14  of a transaction resulting in the sale or lease of goods or services; and (3) damage to the

15  consumer as a result of the alleged conduct. *See* Cal. Civ. Code § 1770(a).

16      39. A plaintiff may not bring a claim for damages under the CLRA unless he has

17  complied with the notice requirement of Cal. Civ. Code § 1782(a). *See, e.g. Laster v. T-*

18  *Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005) (dismissing with

19  prejudice a claim for damages under the CLRA where plaintiffs failed to comply with

20  notice provisions). Section 1782(a) states:

21      Thirty days or more prior to the commencement of an action for damages

22      pursuant to this title, the consumer shall do the following: (1) Notify the

23      person alleged to have employed or committed methods, acts, or practices

24      declared unlawful by Section 1770 of the particular alleged violations of

25      Section 1770. (2) Demand that the person correct, repair, replace, or

26      otherwise rectify the goods or services alleged to be in violation of Section

27      1770. The notice shall be in writing and shall be sent by certified or

28      registered mail, return receipt requested, to the place where the transaction

occurred or to the person's principal place of business within California.

40. Where a challenged practice is set forth, it cannot form the basis of a claim under the CLRA. *See Augustine v. FIA Card Services, N.A.*, 485 F. Supp. 2d 1172, 1174-75 (E.D. Cal. 2007) (holding that CLRA claim was barred where defendants' actions were fully disclosed); *Van Slyke v. Capital One Bank*, No. C 07-00671 WHA, 2007 WL 3435095, *5 (N.D. Cal. Nov. 13, 2007) (denying leave to amend complaint where summary judgment had already been granted on unfair and deceptive practices claim because the interest practice challenged was fully disclosed); *Evans v. Chase Manhattan Bank USA, N.A.*, No. C-05-3968 SC, 2006 WL 213740, *6 (N.D. Cal. Jan. 27, 2006) (dismissing Plaintiffs CLRA claim for unfair or deceptive acts where bank was acting under the fully-disclosed terms of the contract).

41. In this case, plaintiffs did not provide the written notice required by Cal. Civ. Code § 1782(a). Thus, as a matter of law, plaintiffs may not assert a claim for damages under the CLRA.

42. Through the loan applications, promissory notes, disclosure statements, and payment schedules, Sallie Mae set forth the three practices that plaintiffs are challenging. Thus, as a matter of law, those practices may not form the basis for a claim under the CLRA.

### Unjust Enrichment

43. There is no cause of action in California for unjust enrichment. *See, e.g., Yoo v. Wendy's International, Inc.*, No. 07-cv-4515-FMC-JCx at 12 (C.D. Cal. Dec. 5, 2007) (holding there is no action for unjust enrichment in California); *Roots Ready Made Garments v. Gap, Inc.*, No. C 07-03363 CRB, 2008 WL 239254, *8 (N.D. Cal. Jan. 28, 2008) ("[t]here is no cause of action for unjust enrichment"); *Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.*, 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005) ("unjust enrichment is not a valid cause of action in California"); *Melchior v. New Line Prods., Inc.,* 106 Cal. App. 4th 779, 794, 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App. 2003) ("The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the

1   result of a failure to make restitution under circumstances where it is equitable to do
2   so.").

3       44. An action for unjust enrichment does not lie where express binding
4   agreements exist and define the parties' rights. *California Med. Ass'n, Inc. v. Aetna U.S.*
5   *Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172, 114 Cal. Rptr. 2d 109, 125 (Cal. Ct.
6   App. 2001).

7       45. The parties' rights in this case are defined in the loan documents, which are
8   express binding agreements. Thus, as a matter of law, plaintiffs may not maintain a
9   cause of action for unjust enrichment.

10      **E.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW**

11      46. Federal preemption can be expressed or implied. *See Armstrong v.*
12   *Accrediting Council For Continuing Educ. & Training, Inc.*, 168 F.3d 1362, 1369 (D.C.
13   Cir. 1999). Implied preemption may arise in the form of conflict preemption, which
14   occurs when compliance with both federal and state law is a physical impossibility <u>or</u>
15   where state law stands as an obstacle to the accomplishment and execution of the full
16   purposes and objectives of Congress. *See Crosby v. Nat. Foreign Trade Council*, 530
17   U.S. 363, 372-73 (2000).

18      47. Courts have found conflict preemption in other cases involving the HEA. *See*
19   *Armstrong*, 168 F.3d at 1369 (affirming dismissal of contract claims where an "actual
20   conflict" existed between plaintiff's "contract claims and [HEA] regulations"); *see also*
21   *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1264-66 (9th Cir. 1996)
22   (affirming grant of summary judgment on the basis of implied preemption where the
23   remedies sought under Oregon law were in actual conflict with the HEA and would
24   frustrate congressional intent to apply uniform rules).

25      48. "The conflict [between federal and state law] does not evaporate because the
26   Board's regulation simply <u>permits</u>, but does not compel, federal savings and loans to
27   include due-on-sale clauses in their contracts." *Fidelity Fed. Sav. & Loan Ass'n v. De*
28   *La Cuesta*, 458 U.S. 141, 155 (1982) (emphasis added); *see also Geier v. Am. Honda*

*Motor Co., Inc.,* 529 U.S. 861, 886 (2000) (affirming dismissal of state law action where allowing state court jury to find car manufacturer liable for failing to install air bag would create irreconcilable conflict with federal regulation giving manufacturers choice about installing air bags and "would stand as an 'obstacle' to the accomplishment of [the federal] objective").

49. Sallie Mae cannot simultaneously comply with plaintiffs' view of California law and comply with federal law. Moreover, contrary state causes of action or theories such as those proffered by plaintiffs that seek to limit or undermine the framework designed by Congress and the DOE can only be characterized as risking the creation of irreconcilable conflict and the imposition of obstacles to the accomplishment and execution of the full purposes and objectives of the HEA. For all these reasons, plaintiffs' claims are preempted by federal law.

Dated:       May ___, 2008

_____
The Honorable Manuel L. Real
UNITED STATES DISTRICT COURT JUDGE

Respectfully submitted,

Joseph P. Esposito (*admitted pro hac vice*)
William E. Potts, Jr. (*admitted pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036
Phone: (202) 887-4000

Kenneth R. Heitz (Bar No. 53734)
Bruce A. Wessel (Bar No. 116734)
Irell & Manella, LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Phone: (310) 277-1010

Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Statement of Uncontroverted Facts and Conclusions of Law was served electronically and by first class mail, this 12th day of May, 2008 on:

> Andrew N. Friedman, Esq.
> Victoria S. Nugent, Esq.
> Douglas J. McNamara, Esq.
> COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
> 1100 New York Avenue, NW
> West Tower, Suite 500
> Washington, DC  20005
> Tel:   (202) 408-4633
> Fax:   (202) 408-4699
> E-mail: dmcnamara@cmht.com
>
> William J. Genego, Esq.
> Vicki I. Podberesky, Esq.
> NASATIR, HIRSCH, PODBERESKY & GENEGO
> 2115 Main Street
> Santa Monica, CA  90405
> Tel:   (310) 399-3259
> Fax:   (310) 392-9029
> E-mail: wgenego@gmail.com
>
> Michael D. Braun, Esq.
> BRAUN LAW GROUP, P.C.
> 12304 Wilshire Boulevard - Suite 109
> Los Angeles, CA  90025
> Tel:   (310) 442-7755
> Fax:   (310) 442-7756
> E-mail: service@braunlawgroup.com
>
> Thomas P. O'Brien
> Leon W. Weidman
> Carla A. Ford
> Room 7516 Federal Building
> 300 North Los Angeles Street
> Los Angeles, CA  90012
> Tel:  (213) 894-3997

1

Fax:  (213) 894-7819
E-mail:  carla.ford@usdoj.gov

Robert E. Kirschman, Jr.
John Warshawsky
Christian J. Grostic
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Commercial Litigation Branch
Ben Franklin Station, P.O. Box 875
1100 L Street, N.W., Room 10134
Washington, D.C.  20044-0875
Tel:  (202) 307-0010
Fax:  (202) 305-4933
E-mail:  john.warshawsky@usdoj.gov

William E. Potts, Jr.