# EXHIBIT 6

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
 3
    ANN CHAE, WILLIAM J. COAKLEY,  )
 4  HOON KOO, and CARLOS A.        )
    PINEDA, Individually and on    )
 5  Behalf of All Others Similarly )
    Situated,                      )
 6                                 )
            Plaintiffs,            )
 7                                 )
              vs.                  )  CASE NO. CV07-02319
 8                                 )  ER (RCx)
    SLM CORPORATION, SALLIE MAE,   )
 9  INC. and SALLIE MAE SERVICING  )
    CORPORATION,                   )
10                                 )
            Defendants.            )
11  _____)
12
            DEPOSITION OF WILLIAM JOSEPH COAKLEY
13
                 LOS ANGELES, CALIFORNIA
14
                 FRIDAY, MARCH 7, 2008
15
                 9:03 A.M. to 6:15 P.M.
16
17
18
19
20
21                    BenchmarkDepo
                      2049 Century Park East
22                    Suite 4050
                      Los Angeles, California  90067
23                    (310) 556-0595
24
25  REPORTED BY DONNA S. BAKER, CSR No. 7760
```

```
 1      A      Yes.
 2      Q      Did you read that language before you
 3   signed Defendant's Exhibit 65?
 4      A      I believe so, yes.
 5      Q      And you understood that your consolidation
 6   loan would be governed by Federal law?
 7             MR. BRAUN:  Objection, vague and
 8   ambiguous.
 9             THE WITNESS:  Yes.
10      Q      BY MR. POTTS:  Okay.  And you agreed to
11   that term by signing Defendant's Exhibit 65; is that
12   correct?
13             MR. BRAUN:  Objection, vague and
14   ambiguous.
15             THE WITNESS:  Yes.
16      Q      BY MR. POTTS:  Now, if you could look
17   under the heading "Promise to Pay" that appears
18   before your signature, it says, "I, the undersigned,
19   promise to pay to the Student Loan Marketing
20   Association, Sallie Mae, at such address as is
21   designated by Sallie Mae such loan amount as is
22   advanced on my behalf, to pay daily simple interest
23   on the unpaid principal balance thereof at the rate
24   described on the reverse side hereof, all in
25   accordance with the repayment schedule to be
```

Page 59

```
 1   furnished to me, and to pay all late charges."
 2           Do you see that language, sir?
 3   A     Yes.
 4   Q     Did you read that language before you
 5   signed it?
 6   A     Yes.
 7   Q     Did you understand that you were promising
 8   to repay the loan in full?
 9           MR. BRAUN:  Objection, vague.
10           THE WITNESS:  Yes.
11   Q     BY MR. POTTS:  Did you understand that you
12   were promising to pay daily simple interest on the
13   loan?
14           MR. BRAUN:  Objection, vague, ambiguous.
15           THE WITNESS:  I'm sorry.  Repeat the
16   question.
17   Q     BY MR. POTTS:  Did you understand that you
18   were promising to pay daily simple interest on the
19   loan?
20           MR. BRAUN:  Objection, vague and
21   ambiguous.
22           THE WITNESS:  Yes.
23   Q     BY MR. POTTS:  And you agreed to do that
24   by signing, did you not?
25   A     Yes.
```

Page 61

1   Q     And you agreed to that term when you
2   signed deposition -- or Defendant's Exhibit 65, did
3   you not?
4         MR. BRAUN:  Objection, vague and
5   ambiguous.
6         THE WITNESS:  I'm sorry.  One more time,
7   just --
8   Q     BY MR. POTTS:  By signing Defendant's
9   Exhibit 65, you agreed that you would pay all
10  interest that accrues on your consolidation loan
11  commencing on the date of the disbursement?
12        MR. BRAUN:  Vague and ambiguous.
13  Q     BY MR. POTTS:  You agreed to that, did you
14  not, sir?
15        MR. BRAUN:  Same objection.
16        THE WITNESS:  Yes.
17  Q     BY MR. POTTS:  Okay.  And you understood
18  when you read and signed Defendant's Exhibit 65 that
19  you were being told that interest would accrue on
20  your consolidation loan beginning on the date the
21  loan funds were disbursed, did you not?
22        MR. BRAUN:  Objection, vague and
23  ambiguous.
24        THE WITNESS:  Yes.
25  Q     BY MR. POTTS:  Okay.  And the paragraph

1  above that, sir, under the heading "Interest,"
2  paragraph one, the second sentence says, "This loan
3  will bear daily simple interest."
4        Do you see that, sir?
5   A   Wait a minute.  One moment.  I'm sorry.
6  The first paragraph of one?
7   Q   Yes, sir.  The second sentence begins
8  with --
9   A   I see.  I'm sorry.
10  Q   -- "This loan will bear daily simple
11 interest."
12       Do you see that, sir?
13  A   Yes.
14  Q   Okay.  When you signed Defendant's Exhibit
15 65 back in 1997, you were aware that your loan would,
16 in fact, bear daily simple interest; is that correct?
17       MR. BRAUN:  Objection, vague and
18 ambiguous.
19       THE WITNESS:  Yes.
20  Q   BY MR. POTTS:  Okay.  And you agreed to
21 that, did you not?
22       MR. BRAUN:  Vague and ambiguous.
23       THE WITNESS:  Yes.
24  Q   BY MR. POTTS:  On the second page of
25 Defendant's Exhibit 65 about two-thirds down the page

Page 63

1  there's some bold print that says "Forbearance."
2         Do you see that, sir?
3  A     Yes.
4  Q     And it says, and I quote, "If I am unable
5  to make my scheduled payments for reasons of
6  hardship, I may be eligible for forbearance. I
7  understand that during a forbearance interest charges
8  continue to accrue."
9         Do you see that language, sir?
10 A     Yes.
11 Q     Okay. Now, you understood that if you had
12 a financial hardship you could get a forbearance to
13 either reduce your payments or postpone your payments
14 for a temporary period of time?
15        MR. BRAUN: Objection, vague and
16 ambiguous.
17        THE WITNESS: Yes. I think I even looked
18 into that at one point.
19 Q     BY MR. POTTS: Okay. And when you signed
20 and agreed to Defendant's Exhibit 65 you were aware
21 that during a forbearance, interest charges would
22 continue to accrue on your loan; is that right?
23        MR. BRAUN: Vague and ambiguous.
24        THE WITNESS: When I signed -- yeah, I
25 guess.

```
 1      Q    BY MR. POTTS:  Okay.  And you agreed to
 2   that, did you not, sir?
 3           MR. BRAUN:  Vague and ambiguous.
 4           THE WITNESS:  I signed it, so yes.
 5      Q    BY MR. POTTS:  Toward the bottom of the
 6   second page of Defendant's Exhibit 65 is some bold
 7   print that says "Late Charges."
 8           Do you see that, sir?
 9      A    Yes.
10      Q    And it says, and I quote, "Sallie Mae may
11   collect from me a late charge if I fail to pay all or
12   part of a required installment payment within 10 days
13   after it is due or if I fail to provide written
14   evidence that verifies my eligibility to have the
15   payment deferred as described under 'Deferment' in
16   the promissory note.  A late charge may not exceed
17   6 cents for each dollar of each late installment."
18           Do you see that, sir?
19      A    I do.
20      Q    When you signed Defendant's Exhibit 65 in
21   March 1997, you understood that if you made a payment
22   more than 10 days after a scheduled due date, Sallie
23   Mae could charge you a late fee?
24      A    Yes.
25           MR. BRAUN:  Vague and ambiguous.
```

Page 65

```
 1      Q     BY MR. POTTS:  And you agreed to that
 2   term, sir?
 3            MR. BRAUN:  Vague and ambiguous.
 4            THE WITNESS:  Yes.
 5      Q     BY MR. POTTS:  On that same page within
 6   Defendant's Exhibit 65, there is some bold print that
 7   says "Prepayments."
 8            Do you see that?
 9      A     Yes.
10      Q     And it says, and I quote, "I may, at my
11   option and without penalty, prepay all or any part of
12   the principal or accrued interest of this loan at any
13   time."
14            Do you see that, sir?
15      A     Yes.
16      Q     When you signed Defendant's Exhibit 65 in
17   March 1997, you understood that you had the option to
18   make payments early?
19            MR. BRAUN:  Objection, vague and
20   ambiguous.
21            THE WITNESS:  Yes.
22      Q     BY MR. POTTS:  Okay.  Looking above that,
23   sir, there's a section that begins with the bold
24   print, "Grace Period and Repayment of Principal."
25            Do you see that?
```

1   A   Yes.

2   Q   And it says, "My first payment will be due
3   within 60 days of the date of disbursement on my
4   Smart loan account unless I am eligible for deferment
5   as described below."

6   A   Yeah.

7   Q   "The repayment schedule to be furnished to
8   me will establish repayment terms including the
9   length of the repayment period based on information I
10  have furnished on this application/promissory note.
11  The minimum installment payment is equal to not less
12  than the accrued unpaid interest."

13      Do you see that language, sir?

14  A   Yes.

15  Q   Did you read that before you signed
16  Defendant's Exhibit 65?

17  A   To the best of my memory.

18  Q   Did you understand it when you read it in
19  March 1997?

20      MR. BRAUN: Objection, vague and
21  ambiguous.

22      THE WITNESS: To the best of my memory,
23  yes.

24  Q   BY MR. POTTS: Okay. And you agreed to
25  that term, did you not, sir?

```
                                                      Page 270
 1      Q      It's entitled "Accrued Interest by Loan."
 2      A      Okay.
 3      Q      Have you accessed this or used this screen
 4   when you've logged into your Manage Your Loan
 5   Accounts?
 6      A      No, sir.
 7      Q      Are you aware that just by clicking on
 8   your -- logging into your Manage Your Loan Accounts
 9   you can access an interest calculator for your loans
10   which will tell you how much interest accrues on your
11   loans each day?
12             MR. BRAUN:  Objection, vague and
13   ambiguous, assumes facts not in evidence, lacks
14   foundation.
15             THE WITNESS:  By looking at this I'm aware
16   of that now.
17      Q      BY MR. POTTS:  But you've never done that?
18      A      No, sir.
19      Q      Could you look at the next page within
20   Defendant's Exhibit 100.  This particular page
21   contains some questions and answers.
22             Do you see that, sir?
23      A      Yes, sir.
24      Q      Including things like, "Is the interest on
25   my loan tax deductible?"  "What happens if I am ever
```

Page 271

```
 1   late on a payment?"  "How does my interest accrue?"
 2              Were you aware that these questions and
 3   answers were available to you on Sallie Mae's
 4   website?
 5              MR. BRAUN:  Objection, vague and
 6   ambiguous, assumes facts not in evidence, lacks
 7   foundation.
 8              THE WITNESS:  No, sir.
 9       Q      BY MR. POTTS:  You testified before that
10   you've been very proactive in the investigation of
11   this case and the investigation of your claims.
12       A      Yes, sir.
13       Q      And yet you have not accessed the
14   information that is available to you through your
15   Manage Your Loan Accounts?
16              MR. BRAUN:  Objection, vague, ambiguous,
17   lacks foundation, assumes facts not in evidence,
18   argumentative.
19              THE WITNESS:  Correct.
20       Q      BY MR. POTTS:  Are you aware that Sallie
21   Mae's website provides questions and answers for what
22   it characterizes as frequently asked questions?
23              MR. BRAUN:  Objection, vague, ambiguous,
24   assumes facts not in evidence, lacks foundation.
25              THE WITNESS:  I would be generally aware
```

PENALTY OF PERJURY CERTIFICATE

I, WILLIAM JOSEPH COAKLEY, declare that I am the witness in the within matter, that I have read the foregoing transcript and know the contents thereof; that I declare that the same is true to my knowledge, except as to the matters which are therein stated upon my information or belief, and as to those matters, I believe them to be true.

I declare, being aware of the penalties of perjury, that the foregoing answers are true and correct.

Executed this \_\_11\_\_ day of \_\_Aprill\_\_ 2008 at

\_\_Venice\_\_, \_\_California\_\_.
(city)                (state)

_____
WILLIAM JOSEPH COAKLEY

Page 278